DA 08-0383

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 249

STATE OF MONTANA,

        Plaintiff and Appellant,

v.

JASON DOUGLAS HARDAWAY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2006-0492
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Hon. Steve Bullock, Montana Attorney General, John Paulson, Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Sheila R. Kolar, Deputy County Attorney, Billings, Montana

        For Appellee:

            Jim Wheelis, Chief Appellate Defender, Roberta R. Zenker, Assistant Appellate Defender, Helena, Montana

                    Submitted on Briefs:  April 29, 2009

                          Decided:  July 28, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court of Yellowstone County granted Jason Douglas Hardaway's motion to dismiss his criminal drug possession case for lack of a speedy trial. The State of Montana appeals. We affirm.

## ISSUE

¶2 Did the District Court properly grant Hardaway's motion to dismiss for lack of a speedy trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The State of Montana charged Hardaway with felony criminal distribution of dangerous drugs based on a drug transaction between Hardaway and a confidential informant (CI). The charge was subsequently amended to criminal possession of dangerous drugs with intent to distribute. The State claimed that on October 12, 2004, Hardaway sold 1.3 grams of methamphetamine to a CI working with the Division of Criminal Investigations (DCI). DCI referred the case to the Yellowstone County Attorney for prosecution 11 months later, on September 8, 2005. The State formally charged Hardaway on February 10, 2006, and a warrant was issued for Hardaway's arrest on February 23, 2006. At that time, Hardaway was incarcerated in the Yellowstone County Detention Facility on unrelated charges. He was released on April 1, 2006. The February warrant was served on June 19, 2006. On June 30, 2006, Hardaway made a discovery demand for, among other things, the identity of the CI.

¶4 In July, the District Court set an omnibus hearing for September 12, 2006, and a trial for October 30, 2006. The day before the omnibus hearing, Hardaway moved for a

2

continuance because his attorney was not going to be available. The court granted the motion, and reset the omnibus hearing for October 3. Also on October 3, Hardaway filed a motion to suppress evidence he alleged was obtained in violation of his constitutional rights. On October 11, because the State had not yet disclosed the name of the CI, Hardaway requested an extension of time to file a brief in support of his motion to suppress. The District Court gave him until 10 days after the State provided the CI's identity to file his brief in support.

¶5 In December 2006, Hardaway filed a pro se motion to dismiss that he later withdrew. On January 9, 2007, the District Court, apparently realizing that the trial had not been rescheduled from its original October 30, 2006 date, sua sponte reset the trial date to March 19, 2007. On January 12, 2007, Hardaway, through newly-appointed counsel, filed a Motion to Dismiss for Lack of Speedy Trial and Brief in Support. The District Court set a hearing on the motion for February 1, 2007. The State filed its response to Hardaway's dismissal motion on January 30, 2007. Hardaway moved to continue the hearing in order to prepare a reply to the State's response. The court granted the motion and the hearing was held on February 7, 2007.

¶6 On March 2, 2007, the State moved to endorse an additional witness as an expert. On March 6, the court granted the motion over Hardaway's objection. On March 7, Hardaway moved to continue the trial scheduled for March 19 in order to interview the new witness and prepare rebuttal. On March 12, the court granted his motion and rescheduled the trial for April 23, 2007.

¶7 On March 22, 2007, the court denied Hardaway's motion to dismiss. The court analyzed Hardaway's claim under the 4-prong test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, (1972), examining (1) length of delay; (2) reason for delay; (3) defendant's response to delay; and (4) prejudice to the defendant. The court determined that more than 200 days had passed since the filing of the Information, and this length of delay triggered a speedy trial analysis. As part of that analysis, the court attributed the majority of the delay to the State. It concluded, however, that the delay was "institutional" delay rather than intentional and, therefore, did not weigh as heavily against the State. The court acknowledged that Hardaway had timely asserted his right to a speedy trial. Lastly, relying on *City of Billings v. Bruce*, 1998 MT 186, ¶ 19, 290 Mont. 148, 965 P.2d 866, the court examined whether Hardaway's defense was prejudiced by the delay. The District Court considered: (1) pretrial incarceration; (2) anxiety and concern to Hardaway; and (3) impairment to his defense. Addressing each of Hardaway's claims of prejudice, the District Court ultimately concluded Hardaway had not been prejudiced by the delay. Based on its *Barker* analysis, the court denied Hardaway's motion to dismiss for lack of a speedy trial. In April 2007, Hardaway entered a plea of *nolo contendere*. Four hundred and thirty two days had elapsed between the time Hardaway was charged and the date he entered his plea.

¶8 Hardaway appealed the District Court's ruling denying his motion to dismiss for lack of a speedy trial, and we remanded the case to the District Court with instructions that the court analyze the issue by applying the speedy trial test newly set forth in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. The District Court held a hearing

4

on July 9, 2008, and issued its Findings of Fact, Conclusions of Law and Order on July 31, 2008. The court incorporated by reference the factual findings from its March 2007 order, acknowledging that the law had changed but the facts had not.

¶9 The District Court noted that under *Ariegwe*, courts still must analyze a speedy trial claim using the 4-factor test in *Barker* but must include the modifications outlined in *Ariegwe*. Considering the "length of delay" factor, the District Court observed that under *Ariegwe*, once a delay exceeds 200 days, the presumption that pretrial delay has prejudiced the accused intensifies over time. Concluding that this case lasted 432 days— 232 days beyond the threshold 200 days—the court ruled that the State's burden to prove that Hardaway was <u>not</u> prejudiced was heightened, and Hardaway's burden to prove that he was prejudiced was diminished.

¶10 The court then considered the second factor—"reason for delay"—and determined that the first 120 days (from the time Hardaway was charged on February 10, 2006, until he was arrested on June 19, 2006—in actuality, 129 days) was neither institutional nor intentional but could not be attributed to Hardaway; therefore, it must be attributed to the State, though not heavily. Subsequently, the court ruled that 288 days (purportedly from Hardaway's June 19, 2006 arrest until the State disclosed the identity of its CI on February 1, 2007[1]—in actuality, 226 days) weighed heavily against the State because the State had the power and ability to disclose the CI's name much earlier than it did.

---

[1] The parties dispute the date on which the State provided the name of the CI—the State claims it was on January 3, 2007, while Hardaway claims it was February 1, 2007. As indicated above, the District Court concluded it was February 1. This conclusion is supported by Hardaway's January 12 motion to dismiss in which he claims that the State had yet to reveal the name of the

¶11     Turning to the third prong—Hardaway's response to the delay—the court noted that Hardaway diligently attempted to keep his case moving forward and timely brought the speedy trial issue to the court's attention. The court concluded that this weighed heavily in Hardaway's favor.

¶12     Lastly, as noted above, the District Court repeated that Hardaway's need to prove prejudice was diminished by both the length of time that had elapsed and the State's lack of good reason for earlier providing Hardaway with the CI's name. The court determined that the State failed to meet its burden to provide compelling justification for the delay; therefore, balancing all four factors, the District Court granted Hardaway's motion to dismiss for lack of a speedy trial.

¶13     The State filed a timely appeal.

## STANDARD OF REVIEW

¶14     Whether a defendant has been denied the right to a speedy trial presents a question of constitutional law. We review de novo a district court's legal conclusions to determine whether the court correctly interpreted and applied the law. We will not disturb the factual findings underlying a speedy trial ruling unless the findings are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if our review of the record

---

CI. Nothing in the record definitively establishes when this identification occurred. Given the evidence is conflicting, we defer to the District Court's determination. *State v. Lally*, 2008 MT 452, ¶ 22, 348 Mont. 59, 199 P.3d 818 (It is the province of the District Court to weigh the evidence and resolve any conflicts between the parties' positions, and this Court will not second-guess the District Court's determinations regarding the strength and weight of conflicting testimony.).

convinces us that the district court committed a mistake. *State v. Billman*, 2008 MT 326, ¶ 8, 346 Mont. 118, 194 P.3d 58 (citing *Ariegwe*, ¶ 119).

## DISCUSSION

¶15 *Did the District Court properly grant Hardaway's motion to dismiss for lack of a speedy trial?*

¶16 On appeal, the State argues that the District Court's initial denial of Hardaway's motion to dismiss was correct and was fully supported by the court's factual findings. It claims that the court's post-remand order misapplies *Ariegwe* and reaches an incorrect legal conclusion. The State faults the court for erroneously attributing pre-arrest delay to the State, incorrectly weighting certain periods of delay, and failing to attribute and weigh some delays altogether. The State claims that the 432 lapsed days should be broken into 4 increments—129 days for pre-arrest; 204 days from arrest to the January 9, 2007 order resetting trial; 62 days from the January order resetting trial and the March 12, 2007 order resetting trial again; and 37 days from the March 2007 order resetting trial to Hardaway's April 18, 2007 plea. It asserts the District Court erred by dividing the time into 2 periods totaling 408 days—120 days for pre-arrest and 288 days purportedly from arrest to disclosure of the CI's identification. The State correctly notes that the court did not attribute the full number of delay days, i.e., 432. The State also submits that the District Court "provided a cursory, incomplete, and flawed analysis of the prejudice factor." Hardaway counters that the court's interpretation and application of *Ariegwe* was correct.

7

¶17 We note the State does not challenge the court's factual findings. As the factual findings are not disputed, we accept them and turn to the court's conclusions of law. As noted above, the court broke the elapsed time into 2 increments while the State suggested it should be divided into 4 increments. While the State divides the time in the manner anticipated by *Ariegwe*, i.e., from initial charge to first trial setting, from first trial setting to second trial setting, from second trial setting to third, we conclude that the manner of dividing the increments of time would not change the outcome here. Absent a clearly mistaken attribution of delay, we will not put a court in error over its method of dividing the time.

¶18 Turning to the first increment of time, the State urges us to determine that the speedy trial clock does not start running until after a defendant's arrest. The cases relied upon by the State are distinguishable because the facts in each of those cases were unique and, thus, drove the outcome. Moreover, "the right of a defendant to a speedy trial commences when he becomes an accused." *Ariegwe*, ¶ 42. A defendant becomes "an accused" at the time the State files the complaint or at the time he or she is arrested, whichever is earlier. *Ariegwe*, ¶ 42. The State's argument to the contrary is unpersuasive.

¶19 In the case before us, we acknowledge, as argued by the State, that during the 129 days between the filing of the complaint and Hardaway's arrest, Hardaway's life "was not disrupted." Presumably, it was for this reason that the District Court stated this delay would not "weigh heavily" against the State. Certainly, under these circumstances, it should not weigh against Hardaway because he knew nothing of the complaint nor did he

8

intentionally attempt to evade arrest. The alternatives, therefore, are to not attribute this time to either party, as urged by the State, or attribute it to the State. We conclude the District Court did not err by attributing it to the State but assigning it lesser weight.

¶20    Turning to the next period of attributed time, the court attributed 288 days to the State. The court identified this time as the period between Hardaway's arrest and the State's disclosure of the CI's identity. As noted above, this was not 288 days, but rather 226 days. While the court incorrectly calculated the number of days, it correctly attributed this delay to the State. It acknowledged that during this time period, there were numerous motions and delays in the proceeding, but only one continuance was requested by Hardaway, to delay the omnibus hearing. The court concluded that this request for continuance was reasonable in that Hardaway had a right to know the identity of the CI before the omnibus hearing. We note that the reason given in Hardaway's request for continuance of the omnibus hearing was attorney unavailability. Nonetheless, the District Court's reason for attributing this time to the State is correct. Hardaway requested the CI's identity on June 30 and had not received it as of September 11, the day before the omnibus hearing when he moved for a continuance. As a result, the court concluded that it was the State's failure to identify the CI's identity much earlier than it did that caused such a lengthy delay in the proceeding. It therefore weighed this delay heavily against the State. We conclude the District Court did not err in its attribution and assignment of weight to these delay days.

¶21    We next address the 77 days from the February 1 disclosure of the CI's name to Hardaway's April 18 plea that was not specifically attributed by the court. On February

9

1, Hardaway moved to continue the "motion to dismiss" hearing scheduled for later that day on the ground that the State had not filed its response to his January 12 motion until January 30. He stated that he wished to have time to reply before the hearing. The court granted the motion and rescheduled the hearing, holding it on February 7. Subsequently, as noted above, on March 2, the State moved to endorse a DEA agent as an additional expert witness. The court held a hearing on March 6, and over Hardaway's objection granted the State's motion. Hardaway moved to continue the trial scheduled for March 19, 2007, in order to schedule and interview the newly-named witness and to prepare an effective rebuttal. He asked that this additional time be attributed to the State for its late disclosure of a trial witness. The court granted the motion and scheduled the trial for April 23. Hardaway entered a plea on April 18, 2007.

¶22   From the record, the 30 days from February 1 until March 2 appear to be institutional delay appropriately attributed to the State. Additionally, the 47-day delay occasioned by the State's late identification of an expert witness was attributed to the State at the time the District Court granted Hardaway's motion to continue. While the court should have included this attribution in its post-remand order granting Hardaway's motion to dismiss, failure to do so under these circumstances is not reversible error.

¶23   In summary, between the court's order granting Hardaway a continuance to accommodate endorsement of the State's late witness and the court's post-remand order granting Hardaway's motion to dismiss, the District Court attributed the entire delay to the State. While it did not expressly attribute weight to the delay days caused by the State's late notice of a witness, the lack of weight assigned to these specific days does not

affect the outcome of this case. The District Court's rationale for attributing the delay in bringing Hardaway to trial to the State is sound and supported by the record. Therefore, we will not disturb it on appeal despite calculation errors and failure to attribute weight to a small percentage of delay days.

¶24 The State concedes that Hardaway's response to the delay was timely and satisfies the third prong of the speedy trial test. It argues, however, that the District Court, in concluding that this factor "weighs heavily in [Hardaway's] favor," accorded too much weight to this prong in the overall balancing test the court performed. The State maintains that the original "response to delay" analysis of Hardaway's speedy trial claim was conducted under *Bruce* which did not require or allow for such weighting. In other words, under *Bruce*, the defendant either asserted his or her right to a speedy trial before the trial or did not. *Bruce*, ¶ 57. In *Ariegwe*, we noted that the district court analyzed this prong of Ariegwe's speedy trial claim under *Bruce* which did not require weighing this factor and balancing it with the other 3 factors. We stated in *Ariegwe*, however, that we would nonetheless analyze it "to illustrate the process for the benefit of the courts and the litigants who will be applying the test in future cases." *Ariegwe*, ¶ 138.

¶25 We are not persuaded by the State's argument that Hardaway's response to the delay was analyzed under *Bruce* and therefore should not have been weighted by the District Court and considered in the overall balancing of the factors. We remanded this case to the District Court with express instructions to analyze it under *Ariegwe*. Having done so, we will not conclude the court incorrectly applied the *Ariegwe* analysis by assigning weight to the third prong of the speedy trial test and balancing this factor with

the remaining factors. Moreover, given that the entire delay in this case was correctly attributed to the State, disregarding the weight in favor of Hardaway on this prong would not have changed the outcome.

¶26 Lastly, the District Court stated that Hardaway's need to prove prejudice was diminished by the length of the delay and the State's failure to provide compelling justification for the delay. The court concluded that under the circumstances of this case Hardaway was prejudiced and, therefore, was denied his right to a speedy trial. The State opines that while Hardaway's burden to show prejudice may have been diminished by the length of delay and the reasons for delay, it was not eliminated, and the court erred when it allowed the presumption of prejudice to "tip the scales" in Hardaway's favor. We disagree and conclude that in some cases the presumption does, indeed, "tip the scales" in a defendant's favor. In *Billman*, ¶ 47, we stated: "The accused's failure to submit affirmative proof of prejudice is not fatal to a speedy trial claim, and, in the absence of affirmative proof of impairment, we focus on the other speedy trial factors to assess whether the pretrial delay has prejudiced the accused's defense."

¶27 We acknowledge, as argued by the State, that a district court should include its analysis of the balancing process of the 4 factors in its order and the District Court in this case failed to do so in a comprehensive manner. However, reviewing the court's legal conclusions in their totality, we conclude the District Court weighed the length of time of delay (432 days), the State's failure to provide a compelling reason for such delay, Hardaway's 2 timely speedy trial complaints, and the presumption of prejudice, and concluded that Hardaway had been deprived of his right to a speedy trial. Hardaway's

12

burden to demonstrate prejudice was certainly not totally eliminated by the 432-day delay (*Ariegwe*, ¶¶ 56, 58); however, there was ample evidence of prejudice in the record, including Hardaway's complaints of health and financial complications as well as impairment of his defense. Under these circumstances, the State has failed to demonstrate that the District Court's conclusion was wrong.

¶28 We acknowledge that the *Ariegwe* analysis calls for careful weighting and analysis of a number of factors. We urge the district courts to set forth in their speedy trial orders a full *Ariegwe* analysis for the benefit of all parties and this Court on review.

## CONCLUSION

¶29 For the foregoing reasons, we affirm the District Court's order granting Hardaway's motion to dismiss for lack of a speedy trial.

/S/ PATRICIA O. COTTER

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶30 The Court acknowledges that the District Court's analysis under *Ariegwe* is incomplete, but does not regard the error as significant. *Opinion*, ¶ 27. The Court

13

summarily concludes that prejudice has been demonstrated, but in so doing does not analyze whether Hardaway's defense was impaired—despite the recognition in our previous cases and by the U.S. Supreme Court that this is a critical component in consideration of prejudice. *See Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193 (1972) (impairment of defense is the "most serious" form of prejudice, "because the inability of a defendant to adequately prepare his case skews the fairness of the entire system"). I believe the District Court's analysis was flawed and fatal to its ultimate decision, and I would not affirm it.

¶31    When it considered prejudice the first time, prior to our remand for reconsideration under *Ariegwe*, the District Court determined that the "Defendant has suffered little, if any, prejudice," and, concerning the impairment of defense, stated that "the Defendant's defense has not been impaired. If anything the amount of time that has passed has hindered the State's case." The court also found that the facts did not support the Defendant's claim that the delay had caused him increased anxiety, or that the pre-trial incarceration was unduly oppressive. Then, following remand for reconsideration, the District Court determined that "the facts have not changed." In other words, Hardaway still had suffered little, if any, prejudice and, importantly, his defense still had not been impaired. Thus, what remained was the application of the new *Ariegwe* test to these facts.

¶32    However, the District Court substantially abandoned the approach under *Ariegwe* and analyzed prejudice by relying upon *U.S. v. Rucker*, 464 F.2d 823 (D.C. Cir. 1972), which held that a delay of greater than a year and a half virtually eliminates a defendant's

14

burden to show the delay caused him any prejudice. However, we have not adopted such a rule. On the contrary, we held in *Ariegwe*:

> Thus, while both parties should come forward with evidence on the question of prejudice, *the court must weigh each party's evidence (or lack thereof)* in light of this intensifying presumption. Specifically, as the delay gets longer, the necessary showing by the accused of particularized prejudice decreases while the necessary showing by the State of no prejudice simultaneously increases.

*Ariegwe*, ¶ 143 (emphasis added). The holdings in *Ariegwe* and in the seminal *Barker* case emphasize the importance of this approach to analyzing prejudice. Both cases involved substantial delay attributable to the State, but both cases nonetheless determined that the respective defendant's rights to speedy trial had not been violated. Yet, here the District Court did not consider the lack of evidence that Hardaway had been prejudiced. Relying upon the *Rucker* rule, it concluded that "the State has gone beyond the one and a half years, and the State has been unable to provide justification which convincingly outweighs the prejudice *which can be normally assumed*." (emphasis added). The Court summarily affirms the District Court.

¶33 Based upon the District Court's determination that the facts have not changed (Hardaway's defense has not been impaired, he did not sustain inordinate anxiety and his incarceration was not oppressive), and given the proper test to be applied under *Ariegwe*, I would conclude the evidence did not establish that Hardaway sustained the kind of significant prejudice which, upon balancing of the factors, requires the conclusion that his right to a speedy trial was violated. Therefore, I would reverse.

/S/ JIM RICE

15