DA 09-0402

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 145

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT HOUGHTON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 07-255C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Helena, Montana

          Kelli S. Sather, Assistant Public Defender; Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General; Helena, Montana

          Marty Lambert, Gallatin County Attorney; Bozeman, Montana

Submitted on Briefs: May 12, 2010

Decided: June 30, 2010

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Robert Houghton (Houghton) appeals from the order of the Eighteenth Judicial District Court, Gallatin County, denying his motion to dismiss for lack of a speedy trial and upholding his sentence for the offenses of sexual assault and incest.

¶2 We consider the following issue on appeal:

¶3 ***Whether the District Court erred by denying Houghton's motion to dismiss for a violation of his constitutional right to a speedy trial.***

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 The salient events relevant to this appeal begin on March 9, 2007, when Bozeman Police Department Sergeant Bandon Olson informed Detective David McManis (McManis) of a report from D.M.H.'s mother that Houghton had touched D.M.H. and Houghton's stepdaughter, D.J.H., in an inappropriate manner. After interviewing both D.M.H. and D.J.H., McManis attempted to locate and arrest Houghton. Upon arrival at Houghton's residence, Houghton's wife informed McManis that Houghton had left the night before and that she did not know where he had gone. In fact, after the allegations surfaced, Houghton had abruptly left, ultimately moving to Portland, Oregon to live with his father.

¶5 On August 21, 2007, Houghton was charged by information in the Eighteenth Judicial District Court with one count of felony sexual assault, one count of sexual intercourse without consent, and one count of incest with his step-daughter, D.J.H. Houghton was also charged with one count of felony sexual assault regarding D.M.H.

2

An arrest warrant was issued and McManis, who still did not know Houghton's whereabouts, entered the warrant information into the National Criminal Information Center database (NCIC). On December 10, 2007, Houghton returned to Montana, turned himself in and was subsequently arrested.

¶6 On December 17, 2007, Houghton made his initial appearance and pled not guilty to the charged offenses. At that time, the District Court set Houghton's bail at $100,000 and scheduled an omnibus hearing for January 23, 2008. Shortly thereafter, the State sent a letter to Houghton's appointed counsel indicating that discovery was ready and that the documents could be picked up at the County Attorney's office.

¶7 On January 23, 2008, at the first omnibus hearing, Houghton's counsel moved for and was granted a continuance. A second omnibus hearing was held on February 27, 2008, and Houghton's counsel again moved to continue the hearing. The District Court granted Houghton's unopposed request for a continuance and scheduled a third omnibus hearing for March, 28, 2008. At the third omnibus hearing Houghton's counsel once again moved for a continuance. The State did not oppose the motion, but did request that Houghton file a waiver of speedy trial with the District Court. Despite the fact that Houghton did not file a waiver, the District Court granted the motion and scheduled a fourth omnibus hearing for April 23, 2008. At the fourth omnibus hearing, the District Court, apparently at Houghton's request, continued the hearing again. The fifth omnibus hearing on May 22, 2008, was also continued at Houghton's request and the State once more requested that Houghton file a waiver of speedy trial. On June 25, 2008, at the

sixth omnibus hearing, Houghton requested another continuance. The District Court granted the motion and scheduled a seventh omnibus hearing for July 30, 2008. The seventh omnibus hearing proceeded as planned and, after discussing pretrial matters, the District Court set a trial date for January 21, 2009.

¶8 On August 15, 2008, Houghton, believing that he had not received full discovery, filed a motion requesting that the District Court order the State to provide Houghton with D.J.H.'s counseling and medical records from August and September 2006 and March 2007. In addition, Houghton requested D.M.H.'s counseling records and the Department of Public Health and Human Services' (DPHHS) file regarding its involvement with the allegations and charges against Houghton. The State responded to Houghton's motion indicating that it would provide the requested documents.

¶9 On October 28, 2008, the District Court ordered the State to produce the documents but required that, in light of privacy considerations, the counseling records first be reviewed *in camera*. On November 19, 2008, the State provided Houghton with the requested documents and the District Court with the counseling records for the *in camera* review. After reviewing the counseling records, the District Court denied Houghton's request reasoning that they contained no exculpatory evidence.

¶10 On December 5, 2008, Houghton filed the motion to dismiss for violation of his right to a speedy trial. After denying Houghton's motion to dismiss, the District Court ordered that the trial date be reset for April 1, 2009. On March 10, 2009, however,

4

Houghton moved the District Court to set a change of plea hearing. In response, the District Court vacated the trial date and set a change of plea hearing.

¶11 On March 26, 2009, Houghton entered guilty pleas to counts two and four of the information and the State moved to dismiss counts one and three. The plea agreement specifically reserved Houghton's right to appeal the District Court's denial of his speedy trial motion.

¶12 On May 6, 2009, in accordance with the plea agreement, the District Court sentenced Houghton to twenty years in the Montana State Prison with ten years suspended on each count, to be served concurrently. Houghton appeals.

## STANDARD OF REVIEW

¶13 In order to address a speedy trial claim a district court must first make findings of fact. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. This Court reviews those factual findings to determine whether they are clearly erroneous. *Ariegwe*, ¶ 119. A district court's factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119. While the factual findings are reviewed under the clearly erroneous standard, whether those facts amount to a violation of the defendant's right to a speedy trial is a question of constitutional law. *Ariegwe*, ¶ 119. We review a district court's conclusions of law de novo to determine whether the court's interpretation and application of the law are correct. *Ariegwe*, ¶ 119.

5

**DISCUSSION**

¶14 *Whether the District Court erred by denying Houghton's motion to dismiss for a violation of his constitutional right to a speedy trial?*

¶15 "A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution." *Ariegwe*, ¶ 20. In addressing a speedy trial claim, we consider the following four factors to determine if the defendant's constitutional rights have been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) the prejudice caused by the delay to the accused. *State v. Lacey*, 2010 MT 6, ¶ 14, 355 Mont. 31, 224 P.3d 1247. Under this test, no single factor is indispensible or dispositive. "Rather, the factors must be considered together with such other circumstances as may be relevant." *Ariegwe*, ¶ 102.

¶16 The first step in the speedy trial analysis is to determine whether the interval between accusation and trial is sufficient to trigger the four-factor balancing test. *Ariegwe*, ¶ 39. A speedy trial claim lacks merit as a matter of law if the interval between the accusation and the trial is less than 200 days. *Ariegwe*, ¶ 41.

¶17 Here, the length of delay between accusation and the initial trial date was 519 days.[1] Accordingly, the 200 day threshold has clearly been met and we must turn our attention to the four-factor test. In this case, however, as the parties do not dispute that the length of the delay was 319 days past the 200 day trigger and that this length of delay

---

[1] Although there is a one day discrepancy between the parties' calculations of delay, for the purposes of our analysis this discrepancy is inconsequential.

under factor one weighs in favor of Houghton, we begin our analysis under factor two—the reasons for the delay. Under this factor, the court identifies each period of delay in bringing the accused to trial and attributes each period of delay to the appropriate party. *Ariegwe*, ¶¶ 63-64.

¶18 The District Court identified the first period of delay as the 118 days between the date the information was filed and Houghton's initial appearance. Reasoning that Houghton's unannounced move to Portland, Oregon on the very date the victims reported his alleged sexual assaults was not a "mere coincidence," the District Court concluded that Houghton had absconded and attributed that period of the delay to Houghton. The District Court identified the second period of delay as the 38 days between Houghton's initial appearance and his first omnibus hearing as institutional delay and attributed it to the State. The District Court indentified the third period of delay as the 189 days between the first and last omnibus hearings and attributed it to Houghton because he had moved for six continuances. Finally, the District Court indentified the fourth period of delay as the 176 days between the final omnibus hearing and the trial date and attributed it to the State as institutional delay.

¶19 On appeal, Houghton argues that under the second prong of the four-factor balancing test, rather than separate the periods of delay into distinct segments, the District Court should have addressed the entire delay between the filing of the information and the first trial date as one period. Houghton maintains that the entire delay was caused by "the State's and the district court's negligence and lack of diligence" in bringing him to

7

trial. Specifically, Houghton points to what he argues was the State's failure to request and set a timely trial date and its "negligence" in failing to provide Houghton with discovery in a timely manner.

¶20 The State counters that Houghton's "lump-sum" approach to analyzing the delay is not appropriate and that, in any event, the District Court did not err in its application of the four-factor *Ariegwe* test. The State points to Houghton's disappearance from Montana as well as the State's "good faith" efforts to locate Houghton as support for the District Court's conclusion that the 118 day delay between the information being filed and Houghton's initial appearance should be attributed to Houghton. The State also maintains that Houghton's repeated motions for a continuance were the cause of the 189 day delay between the first and last omnibus hearings and that the District Court therefore properly attributed that time period to Houghton. We agree.

¶21 At the outset, we note that the "lump-sum" approach advocated for by Houghton is not appropriate. In *Ariegwe*, we clearly explained that the speedy trial analysis requires identifying *each period* of delay in bringing the accused to trial. *Ariegwe*, ¶ 63. Thus, the District Court appropriately separated out each period of delay to determine whether it should be attributed to Houghton or the State.

¶22 Nevertheless, for the purposes of this appeal, as there is no dispute regarding the periods of delay the District Court deemed to be institutional and attributed to the State, we focus our speedy trial analysis only on those periods of delay attributed to Houghton.

8

We turn first to the 118 day delay between the filing of the information on August 21, 2007, and Houghton's initial appearance on December 17, 2007.

¶23 It is well established that even when an accused is outside of Montana's jurisdiction, the State must act diligently and in good faith to acquire jurisdiction. *Lacey*, ¶ 17. However, if the accused avoids being brought to trial, some or all of the resulting delay should be attributed to the accused. *Lacey*, ¶ 18.

¶24 The record here supports the District Court's attributing the 118 day period of delay to Houghton. First, as the District Court recognized, Houghton avoided being brought to trial by leaving Montana immediately after D.M.H. and D.J.H. reported the sexual assaults. In fact, not only does the record indicate that Houghton left on the exact date he was accused of sexual assault, but it also demonstrates that he did so without notifying his employer, returning his work vehicle or, according to detective McManis, telling his wife where he was going.

¶25 In addition to Houghton's absconding, the record also demonstrates that the State acted diligently and in good faith to acquire jurisdiction over Houghton. Not only did McManis attempt to locate and arrest Houghton at his residence, but he also interviewed Houghton's family and former employer, had dispatch broadcast an attempt to locate Houghton (which included Houghton's name, personal description and vehicle information) and entered the arrest warrant onto the NCIC database. In short, there is ample support for the District Court's conclusion that Houghton absconded and that the State acted diligently and in good faith to acquire jurisdiction. Thus, the 118 day delay

between the filing of the information and Houghton's initial appearance is appropriately attributed to Houghton.

¶26   The second contested period of delay is the 189 day delay that occurred between the first scheduled omnibus hearing on January 23, 2008, and the seventh omnibus hearing that was held on July 30, 2008.  In its ruling, the District Court attributed this delay to Houghton explaining that the delay was directly attributable to Houghton's six requests for continuances.

¶27   On appeal, Houghton maintains that his requests for continuances at each of the first six omnibus hearings were the result of the State's failure to provide full discovery.  Specifically, Houghton points to medical, counseling and DPHHS's records that he sought on August 15, 2008, arguing that the evidence was exculpatory and that the State had failed to provide it in the initial discovery.  The State counters that it provided Houghton with everything in the prosecutor's file in the initial discovery and that it did not resist Houghton's motion requesting the medical and counseling records of D.M.H. and D.J.H.  The State also argues that since Houghton did not become aware of the medical and counseling records until July 15, 2008, after the investigator interviewed the victims, the State's alleged failure to provide full discovery could not have caused the six continuance requests Houghton made prior to July 15, 2008.  We agree.

¶28   As the District Court explained, while a defendant has a constitutional right to obtain exculpatory evidence, the State is not required to take the initiative in procuring exculpatory evidence for the defendant.  *State v. Saxton*, 2003 MT 105, ¶ 32, 315 Mont.

10

315, 68 P.3d 721. Here, not only did the District Court determine that the requested evidence was not exculpatory, but the record also indicates that Houghton requested six continuances without any indication that he was doing so because the State had not provided full discovery. Furthermore, the investigator who conducted the witness interviews that brought the evidence to Houghton's attention testified that the evidence was not known to exist until July of 2008. Therefore, as the District Court explained, Houghton's position that the delay from January 2008 through July 2008 should be attributed to the State because of its failure to produce full discovery is inconsistent with the fact that Houghton was not even aware such additional evidence existed until July 2008. In other words, Houghton's motions for continuances were not driven by the State's failure to produce the records in question. The District Court properly attributed the period of delay from January 23, 2008, until July 30, 2008, to Houghton.

¶29 Having attributed each period of delay to the appropriate party, the next step in the four-factor test requires an examination of the accused's responses to the delay. While "[a] defendant has no duty to bring himself to trial . . . ," *State v. Rose*, 2009 MT 4, ¶ 130, 348 Mont. 291, 202 P.3d 749, "whether the accused actually wanted to be brought to trial promptly is an 'important' consideration in ascertaining whether his or her right to a speedy trial has been violated." *Ariegwe*, ¶ 76. "The accused's various responses to delays, aside from providing some insight into whether he or she actually wanted to be brought to trial promptly, also serve as a useful gauge of the weights the court should assign to the other three factors in balancing . . . ." *Ariegwe*, ¶ 78. While "failure to

11

object to pretrial delay does not, by itself, establish that the accused did not want a speedy trial . . . an absence in the record of any objections to delay will make it difficult for the accused to prove that he or she was denied a speedy trial." *Ariegwe*, ¶ 82.

¶30 In this case, as the District Court pointed out, Houghton did not assert his speedy trial argument until December 5, 2008, the 473rd day of delay and over four months after the trial date had been set. In fact, as discussed previously, it was Houghton who moved the District Court for continuances without any indication that he believed his speedy trial right was being violated. Had Houghton wanted to be brought to trial promptly, he could have moved for additional discovery and objected on speedy trial grounds earlier than August 15, 2008. Thus, the District Court properly analyzed Houghton's responses to the delay and weighed this factor in favor of the State.

¶31 Under the fourth factor of the *Ariegwe* balancing test, we inquire "into whether the accused has been prejudiced by the delay." *Ariegwe*, ¶ 86. While a presumption of prejudice arises when an accused demonstrates a delay of more than 200 days, that presumption does not relieve either party of the burden of coming forward with evidence regarding the existence of prejudice. *Ariegwe*, ¶ 56. Pursuant to the fourth factor of our analysis, we consider the following three important interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. *Ariegwe*, ¶ 88. In determining whether this length of pretrial incarceration is oppressive, we consider the circumstances of the incarceration, including

12

whether the accused engaged in any misconduct directly related to the pretrial incarceration. *Ariegwe*, ¶ 92.

¶32 Here, while Houghton's pretrial incarceration was more than one year, it was directly related to the seriousness of the allegations and the fact that he absconded. As the District Court explained, "in light of the serious allegations against Mr. Houghton, and the factual finding that he absconded, high bail and pretrial incarceration were necessary in order to prevent Mr. Houghton from fleeing."

¶33 Turning to Houghton's anxiety and concern surrounding his pretrial incarceration, we note that a certain amount of anxiety and concern is inherent in being accused of a crime. In examining this interest we consider such factors as public scorn, deprivation of employment, economic hardship and curtailment of associations. *Ariegwe*, ¶ 113.

¶34 Here, the District Court examined each factor and concluded that Houghton failed to present any evidence of public scorn, economic hardship or specific associational curtailments. The District Court further noted that Houghton's flight from Montana necessitated his pretrial incarceration and to the extent he suffered any relevant hardship, it was attributable to his absconding to Oregon. On appeal, Houghton simply asserts that he suffered economic hardship as a result of his incarceration. While this may be so, we conclude that the District Court cogently reasoned and properly concluded that Houghton's absconding weighs this factor against him.

¶35 The third interest, limiting the possibility that the defense will be impaired by dimming memories and the loss of exculpatory evidence, is arguably "the most important

interest that the speedy trial right protects because an accused's inability to present an effective defense undermines the fairness of the system." *State v. Billman*, 2008 MT 326, ¶ 47, 346 Mont. 118, 194 P.3d 58. It is well established that under certain circumstances, where the length of delay is great, the accused's burden of presenting affirmative evidence of prejudice is lessened. *State v. Hardaway*, 2009 MT 249, ¶ 26, 351 Mont. 488, 213 P.3d 776.

¶36 In this instance, the District Court concluded that considering the length of the delay, Houghton's burden to produce evidence of prejudice was lessened and the State "failed to make a 'highly persuasive showing' that Mr. Houghton was not prejudiced by the pretrial delay." We agree with the District Court's analysis and note that here, as the majority of the pretrial delay is attributed to Houghton, at least some of the prejudicial impact is the result of Houghton's own actions. Thus, to the extent Houghton has been prejudiced, the District Court properly determined that this factor should not weigh as heavily against the State.

¶37 In determining whether an accused's right to a speedy trial has been violated we engage in "a difficult and sensitive balancing process." *Ariegwe*, ¶ 102. Accordingly, in assessing a speedy trial claim it is necessary to "balance the four factors on the facts of the particular case and the weights assigned to each factor." *Ariegwe*, ¶ 153. In this instance, we conclude that the District Court properly balanced the four factors and denied Houghton's motion to dismiss for lack of a speedy trial. Despite the length of the delay and the State's failure to make a highly persuasive showing that there was no

14

prejudice, the record supports the District Court's conclusion that on balance, the other factors weigh against finding a violation of the right to a speedy trial.

¶38 We affirm the District Court's denial of Houghton's motion to dismiss for a violation of his constitutional right to a speedy trial.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE