DA 11-0503

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 131

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

WILLIAM GARRETT STOPS,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District,<br>In and For the County of Yellowstone, Cause No. DC 09-0186<br>Honorable Gregory R. Todd, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender, Sarah Chase Rosario, Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

                Scott Twito, Yellowstone County Attorney, Victoria Callender, Deputy County Attorney, Billings, Montana

                Submitted on Briefs:  March 13, 2013

                          Decided:  May 14, 2013

Filed:

_____
                          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      William Garrett Stops (Stops) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to dismiss based on an alleged violation of his speedy trial rights.  We affirm.

## ISSUES

¶2      Stops raises two issues on appeal.  We restate these issues as follows:

¶3      1.  Did the District Court provide sufficient findings of fact and conclusions of law to enable appellate review of Stops' speedy trial arguments?

¶4      2.  Did the District Court err in concluding that Stops' speedy trial rights had not been violated?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      On April 9, 2009, Billings Police Department Officers Kostinko and Aguilar responded to a report of a possible drunk driver.  A citizen complainant, who happened to be a retired Billings Police Officer, was following the suspected drunk driver and reported that the driver nearly caused two head-on collisions.  Officer Kostinko located the suspect vehicle and executed a traffic stop.  As Officer Kostinko exited his patrol car and approached the suspect, the suspect's vehicle began slowly backing up and eventually collided with the patrol car.  Officer Kostinko drew his sidearm and waited for backup to arrive.  Once Officer Aguilar arrived, Officer Kostinko removed the driver from his vehicle.  Officer Chaney arrived shortly thereafter and all three officers assisted in arresting the driver and bringing him into custody.  The driver was later identified as Stops.  The arresting officers noted that Stops demonstrated various signs of alcohol

2

impairment. Stops refused to perform field sobriety maneuvers and refused to provide a breath sample.

¶6      On April 14, 2009, Stops was arraigned on three charges: (1) operation of a motor vehicle while under the influence of alcohol (DUI), felony; (2) resisting arrest; and (3) operating a motor vehicle without proof of liability insurance. The City of Billings also requested restitution in the amount of $2,296.05 for damage to the patrol car. The charges constituted Stops' seventh lifetime DUI and second felony DUI. Stops appeared with a public defender and pleaded not guilty to all three counts.

¶7      On April 15, 2009, the Office of the Public Defender notified Stops and the District Court that Stops did not qualify for representation by a public defender. Stops appeared for a status of counsel hearing on June 22, 2009, and informed the District Court that he had obtained counsel, but his counsel would not be available for another three months. Stops orally moved for a continuance and waived his speedy trial rights. The District Court continued the trial date and set another status hearing for September 22, 2009.

¶8      On September 22, 2009, Stops again appeared without counsel at the status of counsel hearing. Stops informed the District Court that he was still trying to come up with the retainer fee necessary to retain counsel. The District Court scheduled an omnibus hearing for October 26, 2009. Stops appeared at the omnibus hearing without counsel. Since trial was set for December 16, 2009, the District Court scheduled a status hearing for December 7, 2009. On December 7, 2009, Stops appeared with counsel and

moved to continue the trial date. Stops also filed a waiver of speedy trial rights. The District Court reset the trial date for April 29, 2010.

¶9 On March 23, 2010, Stops filed a motion to dismiss the charges against him. Stops alleged that the State intentionally suppressed evidence by withholding the video of the stop. Stops further alleged that the State impeded his right to an independent alcohol test by using excessive force while executing the arrest, which impaired his ability to make rational decisions. The State responded to Stops' motion to dismiss on April 7, 2010. The State countered that it had requested the video of the stop numerous times and was advised that no video footage existed. After an additional request, Officer Chaney searched the archives once again and discovered a video of the stop on April 5, 2010. The State provided this video, which did not contain sound, to Stops on April 6, 2010. The State also argued that Stops did not request an independent blood test and his right to such a test was not impeded. The District Court set an April 23, 2010 hearing date to address Stops' motion to dismiss.

¶10 On April 21, 2010, the State moved to continue the hearing on the motion to dismiss because two of the State's witnesses were unavailable. The District Court vacated the April 23, 2010 hearing and rescheduled it for April 27, 2010. After hearing testimony and considering the parties' briefing, the District Court denied Stops' motion to dismiss.

¶11 Stops filed a motion to continue the trial on April 27, 2010, citing the State's delay in providing the video and the fact that Stops recently provided his counsel with x-rays from Billings Clinic that purportedly supported his contention that the officers acted with

4

excessive force. The State objected to Stops' motion to continue. Stops' motion to continue was accompanied by a waiver of his right to a speedy trial. The District Court rescheduled the trial for November 22, 2010.

¶12 On November 15, 2010, the State moved for a continuance to accommodate the unavailability of one of the State's witnesses. Once again, the District Court vacated the trial date and rescheduled trial for February 9, 2011.

¶13 On January 10, 2011, Stops filed a motion to dismiss based on a violation of his speedy trial rights. Stops filed his brief in support of his motion to dismiss on January 19, 2011. Stops argued that 530 of the 667 days of delay should be attributed to the State. The State countered that 217 days of delay should be attributed to the State with 138 days of the delay attributable to institutional delay. The State argued that much of the delay was attributable to Stops, and that Stops had not been prejudiced by the extended length of time between his arrest and trial.

¶14 On March 1, 2011, the District Court reset the trial date for April 19, 2011. The District Court held a hearing on the motion to dismiss on April 1, 2011. At the close of testimony, the District Court denied Stops' motion to dismiss. The District Court issued its written order on April 7, 2011. The District Court accepted the State's allocation of responsibility for the different periods of delay and determined that Stops' speedy trial rights had not been violated.

¶15 Following a three-day jury trial taking place April 19-21, 2011, the jury found Stops guilty of felony DUI and not guilty of resisting arrest. Stops was sentenced as a persistent felony offender to 20 years in the Montana State Prison with 10 years

suspended, and ordered to pay $2,296.05 in restitution. The District Court entered its final judgment on August 3, 2011. Stops appeals.

## STANDARDS OF REVIEW

¶16 We review the district court's disposition of a motion to dismiss on speedy trial grounds by reviewing the factual findings to determine if they are clearly erroneous. *State v. Sartain*, 2010 MT 213, ¶ 10, 357 Mont. 483, 241 P.3d 1032; *State v. Houghton*, 2010 MT 145, ¶ 13, 357 Mont. 9, 234 P.3d 904. Factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Sartain*, ¶ 10; *Houghton*, ¶ 13. Whether the defendant has been denied the right to a speedy trial presents a question of constitutional law, which we review de novo to determine whether the district court correctly interpreted and applied the law. *State v. Couture*, 2010 MT 201, ¶ 47, 357 Mont. 398, 240 P.3d 987; *State v. Hardaway*, 2009 MT 249, ¶ 14, 351 Mont. 488, 213 P.3d 776.

## DISCUSSION

¶17 *Did the District Court provide sufficient findings of fact and conclusions of law to enable appellate review of Stops' speedy trial arguments?*

¶18 A criminal defendant's right to a speedy trial is a fundamental constitutional right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution. *Couture*, ¶ 3; *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815.

6

¶19 In 2007, this Court revised our framework for analyzing speedy trial claims to closely track the balancing approach utilized by the U.S. Supreme Court. *See Ariegwe*, ¶ 106 (citing *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972); *Doggett v. U.S.*, 505 U.S. 647, 112 S. Ct. 2686 (1992)). We analyze a speedy trial claim by examining and balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused as a result of the delay. *Couture*, ¶ 46; *Ariegwe*, ¶¶ 106-112. Next, we balance these factors with any other relevant circumstances to determine whether the right to a speedy trial has been violated. *Couture*, ¶ 46; *Ariegwe*, ¶ 112.

¶20 Pertinent to our resolution of this matter, we also held in *Ariegwe* "that the court must, of necessity, enter findings of fact and conclusions of law with respect to each of the four factors *and* how the four factors were balanced against each other." *Ariegwe*, ¶ 117 (emphasis in original). In such situations where the district court fails to make the necessary findings of fact and conclusions of law, appellate review of the speedy trial claim is impossible, and we must remand the case back to the district court. *Ariegwe*, ¶ 117.

¶21 Stops contends that the District Court's order denying his motion to dismiss based on an alleged violation of his speedy trial rights was "cursory" and merely "regurgitated the parties' contentions." Stops argues that the District Court failed to sufficiently analyze the four *Ariegwe* factors and did not explain how they were balanced against each other. In support of his argument, Stops asserts that this Court has routinely remanded speedy trial cases for entry of sufficient findings of fact, conclusions of law,

7

and analysis comporting with the *Ariegwe* factors. Stops directs the Court's attention to a number of cases in support of this proposition,[1] and urges the Court to take similar action here. However, the cases cited by Stops were all cases in which the district court applied the outdated speedy trial analysis from *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, instead of the revised speedy trial analysis announced in *Ariegwe*. Stops' reliance on this line of cases is misplaced because the District Court correctly applied the *Ariegwe* speedy trial analysis in the instant case.

¶22    Though the District Court's order denying Stops' motion to dismiss based on a violation of his speedy trial rights is not a model of clarity, it effectively addresses each of the *Ariegwe* factors and balances these factors against the other circumstances in the case. The District Court accepted the full timeline of the case as set forth in the State's briefing, and discussed each relevant period of delay. The record before this Court is sufficient to provide a basis for appellate review of Stops' speedy trial claims.

¶23    *Did the District Court err in concluding that Stops' speedy trial rights had not been violated?*

## A.  The *Ariegwe* Speedy Trial Factors

¶24    As previously stated, we analyze a speedy trial claim by examining and balancing the following four factors:  (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused as a result of the

---

[1] Stops cites to the following cases:  *Hardaway*, ¶¶ 7-8; *State v. Herman*, 2009 MT 101, ¶¶ 21-22, 350 Mont. 109, 204 P.3d 1254; *State v. Rose*, 2009 MT 4, ¶ 37, 348 Mont. 291, 202 P.3d 749; *State v. Billman*, 2008 MT 326, ¶ 7, 346 Mont. 118, 194 P.3d 58; *State v. Howard*, 2008 MT 173, ¶ 25, 343 Mont. 378, 184 P.3d 344; *State v. Madplume*, 2008 MT 37, ¶ 10, 341 Mont. 321, 176 P.3d 1071; *State v. Smith*, 2008 MT 7, ¶ 24, 341 Mont. 82, 176 P.3d 258.

delay. *Couture*, ¶ 46; *Ariegwe*, ¶¶ 106-112. Next, we balance these factors with any other relevant circumstances to determine whether the right to a speedy trial has been violated. *Couture*, ¶ 46; *Ariegwe*, ¶ 112.

### 1. Length of the Delay

¶25 The right of a defendant to a speedy trial commences once a defendant becomes an accused through an arrest, the filing of a complaint, or by indictment by information. *See Ariegwe*, ¶ 42; *State v. Larson*, 191 Mont. 257, 261, 623 P.2d 954, 957 (1981). Further speedy trial analysis is triggered when 200 days have elapsed from the date that the defendant became an accused and the trial date. *Ariegwe*, ¶ 41. We presume that a defendant has been prejudiced minimally at the 200-day trigger point, and that such prejudice intensifies over time. *Ariegwe*, ¶ 56. The State's burden to provide valid justifications for the delay increases with the length of the delay. *Ariegwe*, ¶ 61.

¶26 The speedy trial clock started to run when Stops was arrested on April 9, 2009, and continued to tick away until Stops' trial started on April 19, 2011. The interval between Stops' arrest and his trial included a total of 740 days. Accordingly, the 200-day threshold that triggers further speedy trial analysis has been met. Given the more than two years that elapsed before Stops' trial occurred, the presumption that Stops suffered prejudice and the State's burden to provide valid justifications for the delay are significant in this case.

### 2. Reasons for the Delay

¶27 Under this factor, we must first identify each period of delay, attribute each period of delay to the appropriate party, and then assign weight to the periods of delay based on

9

the reasons for that delay. *Ariegwe*, ¶¶ 63-64. Since the State bears the duty to timely bring a defendant to trial, delay is charged to the State unless the defendant caused the delay or affirmatively waived the speedy trial right for the period of time in question. *State v. Billman*, 2008 MT 326, ¶ 20, 346 Mont. 118, 194 P.3d 58; *Ariegwe*, ¶¶ 64-65. Institutional delay and delay for valid reasons weigh less heavily against the State than delay resulting from the State's lack of diligence or bad faith. *Billman*, ¶ 20; *Ariegwe*, ¶ 108. Institutional delays are inherent in the criminal justice system and frequently occur due to circumstances beyond the control of the defendant or the State. *Billman*, ¶ 20. Valid reasons for delay may include the unavailability of a key witness or additional time needed to prepare for a particularly complex trial. *Billman*, ¶ 20; *Ariegwe*, ¶ 70.

### a. The first delay

¶28 The first period of delay we must address is the 138 days from Stops' arrest until his original August 25, 2009 trial date. The District Court attributed this period of delay to the State as institutional delay. The parties do not dispute that this period of delay should be attributed to the State as institutional delay.

### b. The second delay

¶29 The second period of delay stretched from August 25, 2009, to the second trial date on December 16, 2009. This period of delay totaled 113 days. On June 22, 2009, the District Court held a status of counsel hearing. Stops appeared at the hearing without counsel and informed the District Court that he had obtained counsel, but his counsel was unavailable for another three months. Stops was notified on April 15, 2009, that he did

10

not qualify for a public defender. Citing his need for more time to obtain proper counsel, Stops requested a continuance at the hearing. The District Court questioned Stops concerning his knowledge and understanding of his right to a speedy trial. Stops indicated that he had no questions about the District Court's explanation or his speedy trial rights and he agreed to orally waive his right to a speedy trial. The District Court granted Stops a continuance and advised him of the importance of obtaining representation as soon as possible. The District Court attributed this second period of delay to Stops because he requested the continuance and waived his speedy trial rights.

¶30 Stops argues that his waiver of speedy trial rights was not made knowingly and voluntarily. Stops contends that the District Court did not sufficiently inform him of the consequences and significance of his waiver. Furthermore, Stops maintains that it was improper for the District Court to require him to waive his speedy trial rights to obtain a continuance. We recognize that a defendant cannot be forced to waive his right to be brought to trial promptly in order to exercise his right to prepare a defense. *See Couture*, ¶ 78 n. 5. Nonetheless, "[i]f the defendant caused a particular delay, it will be attributed to him regardless of whether he signed a waiver for that period." *Couture*, ¶ 78 n. 5.

¶31 The record clearly demonstrates that the Stops caused the delay due to his inability to obtain counsel. The District Court explained to Stops that even once he retained a lawyer, it would likely take several months for the lawyer to become familiar with the case and prepare for trial. Stops indicated that he understood a continuance would cause a significant delay and affect his right to a speedy trial. Under these circumstances, we will not allow Stops to blame the State or the District Court for his own failure to timely

retain counsel. We agree with the District Court that this second period of delay consisting of 113 days should be attributed to Stops.

### c. The third delay

¶32 The third period of delay encompasses the interval between the second trial date on December 16, 2009, and the third trial date on April 29, 2010, amounting to 134 days. The District Court attributed this period of delay to Stops because Stops filed a motion for a continuance of the trial date on December 7, 2009. Stops also concurrently filed a waiver of his speedy trial rights.

¶33 We agree with the District Court's decision to attribute this period of delay to Stops. Stops retained counsel only one week before the scheduled December trial date. Although Stops did not make this argument before the District Court, he now argues on appeal that only 53 days of the third period of delay should be attributed to him because he needed only 60 days to prepare for trial when he filed his motion for a continuance on December 7, 2009. We will not consider arguments presented for the first time on appeal. *State v. Hendershot*, 2009 MT 292, ¶ 31, 352 Mont. 271, 216 P.3d 754. Stops admitted in his briefing before the District Court that this third period of delay should be attributed to him in its entirety and he affirmatively waived his speedy trial rights for this period. We conclude that the 134 days constituting this third period of delay must be attributed to Stops.

### d. The fourth delay

¶34 Next, we consider the fourth period of delay, consisting of 217 days that occurred between the April 29, 2010 trial date and the November 22, 2010 trial date. The District

12

Court attributed this period of delay to Stops because he filed a motion for a continuance of the April 29, 2010 trial date and submitted a waiver of his speedy trial rights. Stops argues that this period of time should be attributed to the State because the State's delay in providing him a video of the stop made it impossible to be prepared for trial on April 29, 2010.

¶35 The State asserts that it did not learn of the existence of the video until April 5, 2010. The State provided the video to Stops on April 6, 2010. Stops had 23 days to review the video and adjust his trial strategy. Stops asserted in his April 27, 2010 motion for a continuance that the reason he needed more time was because Stops provided his counsel with x-rays from Billings Clinic on April 26, 2010—only three days before trial. Stops admitted that he was unable to open the images and properly review them, but he believed they showed a fracture to Stops' eye socket area and cheek bone. Stops specifically requested that the court continue the matter until the evidence could be reviewed and hospital records could be obtained. The State objected to Stops' request for a continuance. Under these circumstances, we agree with the District Court that the fourth period of delay must be attributed to Stops.

### e. The fifth delay

¶36 The fifth period of delay totaled 79 days and ran from November 22, 2010, to the February 9, 2011 trial date. The District Court attributed this period of delay to the State and neither party disputes this conclusion. The State requested a continuance due to the unavailability of Officer Kostinko. Though this delay is attributable to the State, the

13

delay was premised on the unavailability of a key witness, which is a "valid reason" and is therefore weighed less heavily against the State. *See Billman*, ¶ 20; *Ariegwe*, ¶ 70.

### f. The sixth delay

¶37 The sixth and final period of delay we must address is the 69 days from the February 9, 2011 trial date to the April 19, 2011 trial. Due to the timing of Stops' motion to dismiss for violation of his speedy trial rights, the District Court did not address this period of delay.

¶38 Delay directly attributable to the filing of a speedy trial motion less than thirty days before a scheduled trial date is attributable to the defendant, while delay attributable to a speedy trial motion filed thirty days or more prior to a scheduled trial will be charged to the State. *Ariegwe*, ¶ 116. We announced this rule in *Ariegwe* because "due consideration of a speedy trial motion generally requires time for an evidentiary hearing and a careful analysis of the facts pursuant to the four-factor balancing test set forth above (not to mention the time required for the parties to brief the issues fully), which cannot realistically be accomplished in less than thirty days without postponing the existing trial date." *Ariegwe*, ¶ 115.

¶39 On January 10, 2011, which was exactly thirty days before the February 9, 2011 trial was scheduled, Stops filed his motion to dismiss for violation of his speedy trial rights. However, Stops did not file his brief in support of his motion to dismiss until January 19, 2011. The State filed its response brief on February 4, 2011, and Stops filed his reply brief on February 10, 2011. Stops' filing of his opening brief when only 21 days remained before trial did not provide the parties with sufficient time to fully brief

14

the issues and did not allow the District Court enough time to make an informed decision. Stops' reply brief was filed a day after the scheduled trial date, and the District Court did not have an opportunity to hold a hearing on the speedy trial motion until the trial date had passed. Accordingly, we conclude that the sixth period of delay must be attributed to Stops.

### 3. The Accused's Response to the Delay

¶40   This Court evaluates a defendant's various responses to the delays in bringing him to trial to determine whether the totality of the defendant's conduct evinces a sincere desire to be brought to trial. *Ariegwe*, ¶ 85. Conduct that demonstrates a defendant's desire to avoid trial weighs against him in the overall balancing. *Ariegwe*, ¶ 85. The District Court determined that Stops' response to the delay in bringing his case to trial showed little concern for moving his case along. The District Court pointed to the fact that Stops took eight months to secure representation, and he filed three motions to continue and two motions to dismiss. Stops orally waived his right to a speedy trial even after the District Court warned him of the delay it could cause in resolving his case. Stops filed two subsequent written waivers of his speedy trial rights. Stops fails to point to any conduct during the more than two years during which his case was pending that suggests he was interested in moving his case along more quickly and getting to trial sooner.

### 4. Prejudice to the Accused

¶41   Under this factor, we consider prejudice to the defendant in light of the following three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety

and concern of the accused; and (3) limiting possibilities of the defense being impaired due to the delay. *Sartain*, ¶ 21; *Ariegwe*, ¶ 88. As the delay lengthens beyond the 200-day trigger point, we require less proof from the defendant showing prejudice and more proof from the State showing a lack thereof. *Sartain*, ¶ 21; *Ariegwe*, ¶ 49.

¶42 The District Court determined that Stops did not demonstrate that he suffered any prejudice. Stops spent four days incarcerated following his arrest. Though the District Court noted that Stops expressed anxiety at the April 1, 2011 hearing, it concluded that all of Stops' anxiety was connected to his alleged mistreatment by the police when he was arrested, and not to any delay in bringing his case to trial.

¶43 Stops argues that the concussive trauma he suffered on the night of his arrest has caused a continuing deterioration of his memory. Stops contends that the delay in the case caused prejudice because he was no longer able to accurately recall what he had testified to earlier in the proceedings and was unable to remember important facts. As a result of the long delay and his physical condition, Stops asserts that his credibility before the jury was damaged.

¶44 Even in his own briefing, Stops alleges that the prejudice was actually caused by the police. Stops failed to provide any evidence that his alleged memory problems were growing worse with time, and made no effort to bring this information to the District Court's attention until nearly two years had passed. Our review of the trial transcript reveals that Stops had a clear memory of many of the details from the night of his arrest. He was able to fully remember his state of mind from the night in question and testified in detail to the events leading up to his arrest. Stops admits that the State's attempt to

16

impeach his testimony at trial focused on "inconsequential details" and "minutiae" rather than the facts central to his defense.

### 5. Balancing the Four Factors

¶45 The length of the delay, which totaled 740 days, significantly exceeds the 200-day trigger point and weighs in favor of Stops. However, when we balance the reasons for the delay, the second factor weighs in favor of the State. We attributed 217 days of the delay to the State and 533 days of the delay to Stops. Of the 217 days attributed to the State, 138 of those days were the result of institutional delay, and valid reasons supported the remaining 79 days of delay. The third factor—the accused's response to the delay—also weighs in favor of the State because Stops' conduct did not demonstrate that he was particularly interested in advancing his case to trial. Stops failed to demonstrate substantial prejudice to his ability to defend himself and the State effectively showed a lack of prejudice, leading us to weigh the fourth factor—prejudice to the accused—in favor of the State.

¶46 Given the length of the delay, the cause of each period of delay, the totality of Stops' responses to the delay, and the strength of the parties respective showings on the issue of prejudice, we conclude that Stops was not deprived of his constitutional right to a speedy trial.

### CONCLUSION

¶47 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

17

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON