
DA 13-0249

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 25N

LAZY JC RANCH, LLC,

        Plaintiff and Appellee,

   v.

CHARLIE DONNES,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-Second Judicial District, In and For the County of Carbon, Cause No. DV 08-86 Honorable Blair Jones, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Thomas A. Budewitz, Attorney at Law; Helena, Montana

        For Appellee:

            Jared M. Le Fevre, Monique Voigt, Crowley Fleck, PLLP; Billings, Montana

                Submitted on Briefs:  December 18, 2013
                           Decided:  January 28, 2014

Filed:

                                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Charlie Donnes (Donnes) appeals from the Judgment of Montana Twenty-Second Judicial District Court, Carbon County, finding that Lazy JC Ranch (Lazy JC) had established a prescriptive easement to use an access road to cross his property and enjoining him from interfering with Lazy JC's use of the road.

¶3      In 1998, Donnes inherited certain real property located in Carbon County, Montana. That property was originally homesteaded in 1901, with the patent issuing in 1906.  Lazy JC owns adjoining property, which it acquired from Joe and Constance Chenoweth (Chenoweth) in 1994.  Portions of the Chenoweth property were previously owned by the Umland family.  Different portions of the property stem from different patent dates, all of which date to the early 1900s.

¶4      A county road traverses Donnes's property.  At issue is a private access road (Access Road) leaving the county road, crossing Donnes's property and entering Lazy JC's property.  The Access Road is about eighteen feet wide, graveled, and fenced on either side.  After crossing Donnes's property, the Access Road traverses Lazy JC's property and connects with properties south of Lazy JC that were historically developed for oil, starting in the 1890s. Oil developers accessing those southerly properties used the Access Road beginning before Donnes's predecessor settled on, or acquired an interest in, the property Donnes now owns.

2

¶5     From 1902 to 1931, the Butcher Creek School was located on property that now belongs to Donnes, and students from surrounding homesteads used the Access Road to reach the school. Neighboring families—including the Umlands—used the Access Road for ingress and egress to and from their properties, to obtain mail, and to move cattle, among other uses. Their guests also used the Access Road. The Forest Service used the Access Road to fight fires. At some time around 1954, after a petition to make the Access Road a county road failed, the County paid for the leveling and graveling of the road. Gates on either end of the Access Road have been in place since the 1950s and were used to discourage hunters from accessing the property and to keep cattle within the property boundaries. Donnes's predecessors never denied ingress and egress to anyone traveling the Access Road and no one ever asked permission to use the road. At one point, someone placed a post in the Access Road. John Umland removed the post and continued using the road.

¶6     From 1978 to the initiation of this suit, Chenoweth and Lazy JC have used the Access Road as the primary means of ingress and egress to the home on the property. From 1978 to 1992, Chenoweth and his lessees used the Access Road for ingress and egress to the home on the property, to move cattle, check fences, ensure that the pasture land was sufficient, and make sure that the home was secure. Between 1981 and 1996, the Chenoweths plowed, repaired, and maintained the Access Road on multiple occasions. Chenoweth lived on the property now owned by Lazy JC between 1992 and 1995. Since 1995, he has split his time between Lazy JC's property and his home in Billings, Montana. Chenoweth and Lazy JC have consistently used the Access Road for ingress and egress to their property.

¶7     Donnes visited the Donnes property between 1994 and 2000, but did not live on the property, or in Montana, until 2000. In 1995, Donnes sent a written letter concerning the Access Road to Chenoweth. He did not take any action to keep Chenoweth from using the road. In 2003, Chenoweth and Donnes discussed the Access Road. Chenoweth advised Donnes that he had an historic easement right to use the road. Chenoweth plowed the road every year between 1995 and 2008, except for two years. In February 2008, Donnes attempted to prevent Chenoweth from plowing snow from the road. Chenoweth drove over the road repeatedly to make a passable track to the home. Donnes attempted to block Chenoweth from using the Access Road with his pickup on July 15, 2008. Chenoweth called the Carbon County Sheriff's Department. Donnes moved his vehicle and the Lazy JC workmen who were using the road continued using it.

¶8     In May 2008, Lazy JC filed a Complaint against Donnes claiming it was entitled to a prescriptive easement "over, upon and across the Access Road" for its own use and that of its guests and invitees, and requesting a permanent injunction prohibiting Donnes from interfering with its use of the Access Road. At a bench trial, Lazy JC presented evidence and testimony pertaining to historic prescriptive use of the Access Road. Donnes presented evidence and testimony that the use was permissive. The District Court entered Findings of Fact, Conclusions of Law and an Order on December 17, 2012, in which it found that Lazy JC was entitled to a prescriptive easement and an injunction preventing Donnes from interfering with its use of the easement. The court entered Judgment in Lazy JC's favor, awarding costs in the amount of $4055.94 to Lazy JC. Donnes appeals.

4

¶9 We review a district court's findings of fact for clear error. *Boyne USA, Inc. v. Spanish Peaks Dev., LLC*, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. We review a district court's conclusions of law de novo to determine whether the court's interpretation and application of the law are correct. *State v. Houghton*, 2010 MT 145, ¶ 13, 357 Mont. 9, 234 P.3d 904 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815).

¶10 Donnes argues that the District Court erred in determining that Lazy JC holds a prescriptive right to use the Access Road and that the District Court erred in taxing costs to Donnes. To establish an easement by prescription, the party claiming the easement must prove, by clear and convincing evidence, the elements of open, notorious, continuous and uninterrupted, exclusive and adverse use of the easement for five years before commencement of the action. *Albert v. Hastetter*, 2002 MT 123, ¶ 20, 310 Mont. 82, 48 P.3d 749; §§ 70-19-401 and 70-19-404, MCA. After a claimant has established the elements of a prescriptive right, a presumption of adverse use arises and the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive. *Wareing v. Schreckendgust*, 280 Mont. 196, 209, 930 P.2d 37, 45 (1996) (citing *Tanner v. Dream Island, Inc.*, 275 Mont. 414, 425, 913 P.2d 641, 648 (1996); *Lemont Land Corp. v. Rogers*, 269 Mont. 180, 185, 887 P.2d 724, 727-28 (1994)).

¶11 The District Court properly interpreted the evidence before it to conclude that Lazy JC is entitled to a prescriptive easement and a permanent injunction preventing Donnes from interfering with its use of the Access Road. The District Court did not, as Donnes contends, consider use by parties other than Lazy JC and Lazy JC's predecessors as evidence of Lazy JC's prescriptive claim. Instead, the District Court relied on the evidence of use by the oil

5

developers and schoolchildren mainly to illustrate that the public had long been using the Access Road under a claim of right sufficient to put the Donneses on notice of potential adverse claims. The District Court also correctly concluded that the evidence of the oil developers' use tends to rebut Donnes's assertion that use of the Access Road was originally permissive, since the road's existence predated Donnes's predecessors' ownership of the property. Lazy JC presented clear and convincing evidence that the elements of a prescriptive easement were satisfied, in the form of public records and testimony from adjoining landowners and the parties' predecessors in interest. A presumption of adverse use arose, which Donnes bore the burden of rebutting.

¶12 Donnes's proposed alternate view of the evidence is not sufficient, in our view, to carry his burden of proving use of the road was permissive. Although the significance of the facts Donnes highlights, on appeal, is certainly open to interpretation, their nature is not so unmistakable as to render the District Court's conclusions as to their legal significance incorrect.

¶13 The District Court did, however, err in taxing certain costs to Donnes. Section 25-10-201, MCA, sets forth which costs may be taxed to the non-prevailing party:

> (1) the legal fees of witnesses, including mileage, or referees and other officers;
>
> . . .
>
> (9) other reasonable and necessary expenses that are taxable according to the course and practice of the court or by express provision of law.

The costs Donnes contests are a video-conferencing fee of $330.33, the cost of a copy of a deposition transcript made for Lazy JC's counsel, and Lazy JC's share of the mediation fee. No local rule or practice requires the losing party to pay all mediation fees, nor could such

6

practice be considered "customary." Regarding the video-conferencing cost, however, as Lazy JC points out, Montana law "respects form less than substance." Section 1-3-219, MCA. The cost of the video-conferencing fee, which is far less expensive than the cost of mileage would have been, seems to be within what was contemplated by the Legislature when it provided "legal fees of witnesses, including mileage" are recoverable. Finally, the District Court correctly concluded the cost of the deposition transcript was recoverable, pursuant to our decision in *Liedle v. State Farm Mut. Auto. Ins. Co.*, 283 Mont. 129, 135, 938 P.2d 1379, 1383 (1997). As the District Court reasoned, since Donnes used the transcript at trial, Lazy JC needed a copy to ensure that Chenoweth's testimony was consistent and to rebut Donnes's attempt to impeach Chenoweth.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are controlled by the statutes and precedent. The District Court correctly concluded that Lazy JC is entitled to a prescriptive easement to use the Access Road and granted Lazy JC a permanent injunction to prevent Donnes from interfering with Lazy JC's use of the easement. We affirm that portion of the District Court's opinion. We reverse the District Court's determination that Donnes must pay the cost of Lazy JC's share of the mediation fee.

¶15 Affirmed in part and reversed in part.

/S/ MICHAEL E WHEAT

We Concur:

7

/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON