FILED

02/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0550

DA 15-0550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 29

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

DEVIN J. EYSTAD,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DC-12-335 (D)
                    Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Chief Appellate Defender, James Reavis, Assistant
                Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
                Assistant Attorney General, Helena, Montana

                Ed Corrigan, Flathead County Attorney, Stacy Boman, Deputy County
                Attorney, Kalispell, Montana

                Submitted on Briefs:  December 14, 2016

                             Decided:  February 21, 2017

Filed:

_____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Devin Eystad appeals from the District Court's Opinion and Order of July 24, 2015, which affirmed the Order of the Flathead County Justice Court dated August 1, 2012. The Justice Court's order denied Eystad's motion to dismiss the criminal charges against him based upon denial of a speedy trial. We affirm.

¶2     We restate the issue on appeal as follows:

*Did the Justice Court properly deny Eystad's motion to dismiss the criminal charges against him based upon violation of his right to a speedy trial?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On February 13, 2009, the State charged Eystad with motor vehicle offenses (driving with a suspended license, driving without a license plate) and served him with a complaint and notice to appear. The complaint required him to appear before the Flathead County Justice Court on or before February 27, 2009, for an initial appearance and arraignment. Eystad failed to appear and the Justice Court sent him a notice requiring him to appear on March 27, 2009, for an initial appearance and arraignment. That notice also warned him that failure to appear would result in suspension of his driver's license. Eystad again failed to appear. On April 13, 2009, the Justice Court suspended his license, and on May 21, 2009, it issued a warrant for Eystad's arrest for failing to appear.

¶4     On April 13, 2012, Eystad was arrested on the warrant from May 2009. He made an initial appearance in Justice Court on April 16, 2012, and pled not guilty. The Justice Court set trial for August 23, 2012. At the June 12, 2012 omnibus hearing in Justice

Court, Eystad moved to dismiss the charges against him for lack of a speedy trial. The Justice Court held a hearing on the motion on July 30, 2012, and Eystad testified.

¶5 The Justice Court's post-hearing order concluded that "Eystad acquiesced in the great majority of the delay period" between the original charges in 2009 and his arrest in 2012. The Justice Court found that Eystad ignored all notices and orders requiring him to appear, and that his appearance in April 2012 was "involuntary," resulting from arrest. The Justice Court found that the record demonstrated that Eystad "placed a very low value and priority on obtaining a speedy trial in this matter." In addition, Eystad was subjected to "virtually no pretrial incarceration" and the subject traffic offenses "are not particularly complex in nature."

¶6 The Justice Court found that Eystad presented no evidence that the delay in bringing him to trial disrupted his life in any way. To the contrary, "it appears that Eystad has been largely able to go about his life since February 2009 with only the minimal intrusion of his arrest in 2012 to be brought before the Court for arraignment." The Justice Court found that Eystad presented no evidence of community scorn or of damage to his reputation; no evidence of economic hardship; and no evidence of an adverse impact upon his ability to defend against the original charges.

¶7 The Justice Court concluded that while there was a lengthy delay (1288 days) between the initial charges and the trial date, the reasons for the delay "do not weigh heavily against the State, nor do they work to the substantial prejudice of Eystad." The Justice Court found that there was no evidence of bad faith by the State to gain a tactical advantage, and that Eystad "shares responsibility with the State" for ninety percent of the

3

delay period. The Justice Court concluded that Eystad's ability to defend against the charges had not been prejudiced; there was no oppressive pretrial incarceration; his life was not disrupted; and his standing in the community was not affected. Based upon this record, the Justice Court concluded that Eystad's constitutional right to a speedy trial had not been violated.

¶8 Eystad then entered a plea agreement in which he pled guilty to driving with a suspended license, the other charge was dismissed, and he reserved the right to appeal to District Court. The Justice Court sentenced Eystad to six months in jail with all but two days suspended, giving him credit for two days served after the arrest in 2012.

¶9 On August 17, 2012, Eystad appealed to District Court. In an ironically-belated ruling in July 2015, the District Court upheld the Justice Court's determination that Eystad was not denied his right to a speedy trial. Eystad appeals.

**STANDARD OF REVIEW**

¶10 A justice court is a court of record, and an appeal to the district court is an appeal on the record in which the district court functions as an intermediate appellate court. Sections 3-5-303 and 3-10-115, MCA; *Stanley v. Lamire*, 2006 MT 304, ¶ 24, 334 Mont. 489, 148 P.3d 643. In an appeal from a justice court of record, the district court's review is confined to the record. The district court reviews the justice court's findings of fact to determine whether they meet the clearly erroneous standard, reviews discretionary rulings for abuse of discretion, and reviews legal conclusions to determine whether they are correct. *Stanley*, ¶ 25. Findings of fact are clearly erroneous if they are not based upon substantial evidence, if the court has misapprehended the effect of the evidence, or

4

if our review convinces us that a mistake was made. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254. On appeal from the district court's review of the justice court decision, this Court examines the record independently to determine whether the justice court's findings of fact meet the clearly erroneous standard, whether its discretionary rulings were an abuse of discretion, and whether its legal conclusions were correct. *Stanley*, ¶ 26.

## DISCUSSION

¶11 *Issue: Did the Justice Court properly deny Eystad's motion to dismiss the criminal charges against him based upon violation of his right to a speedy trial?*

¶12 Eystad contends that his right to a speedy trial was denied because of the lapse of time—almost 1300 days—between being charged in February 2009 and the trial on the charges set for August 2012.[1]

¶13 The defendant in a criminal case has a right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution, and under Article II, Section 24 of the Montana Constitution. *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815. Determining whether the defendant has been afforded a speedy trial depends upon weighing the conduct of the prosecution and the defendant, *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2191-92 (1972), so that evaluation of speedy trial claims is necessarily relative and depends upon the circumstances of each case, *State v. Hodge*, 2014 MT 308, ¶ 15, 377 Mont. 123, 338 P.3d 8. A speedy trial analysis is

---

[1] Section 46-13-401(2), MCA, provides for dismissal of a misdemeanor charge if it is not "brought to trial" within six months after entry of a plea to the charge. Under the facts of this case, Eystad's plea was less than six months prior to the Justice Court trial, so that statute forms no basis for relief to Eystad.

structured around four factors: the length of the delay; the reasons for the delay; the accused's response to the delay; and the prejudice to the accused as a result of the delay. *Hodge*, ¶ 15.

¶14 The first factor, length of the delay, warrants little discussion in this case. The relevant period was over 1200 days between the time of the original criminal charges and the time the case was set for trial. This is well beyond the 200-day "trigger date" that allows a defendant to raise the speedy trial issue. *State v. Valesquez*, 2016 MT 216, ¶ 9, 384 Mont. 447, 377 P.3d 1235.

¶15 The second factor in the analysis is the reason for the delay, which usually involves an allocation of days as between the State and the defendant based upon an assessment of responsibility. In *Hodge* we considered a speedy trial issue under facts similar to the present case. In May 2010 the State charged Hodge with several traffic offenses and he appeared for arraignment several weeks later. After Hodge missed several subsequent court appearances the justice court issued a warrant for his arrest. Hodge was arrested on that warrant almost two years later and subsequently moved to dismiss on speedy trial grounds. The justice court held a hearing on the motion to dismiss and although Hodge's attorney attended the hearing, Hodge did not. He did not present any evidence in support of his motion. The justice court denied the motion to dismiss and Hodge appealed.

¶16 This Court affirmed, agreeing with the justice court's conclusion that most of the delay in the case was not attributable to the State for failing to find and arrest Hodge. To the contrary, most of the delay was attributable to Hodge's decision to ignore the justice

6

court's initial orders to appear for court proceedings and his decision to "remain at large for 22 months." Therefore the lapse of time "weighs heavily against him." *Hodge*, ¶ 21. While the State has an obligation to timely bring a prosecution to trial, that duty does not require local law enforcement to "babysit" a defendant to ensure his appearance in court. "A defendant who chooses to keep himself deliberately ignorant of the proceedings, or who has knowledge of the proceedings and is voluntarily absent, should expect that the resulting delay in locating him and bringing him back to court may be attributed to him." *Hodge*, ¶ 20. Similarly, conduct by an accused that demonstrates a "desire to avoid trial" weighs heavily against him in a speedy trial analysis. *State v. Stops*, 2013 MT 131, ¶ 40, 370 Mont. 226, 301 P.3d 811. If an accused avoids being brought to trial, some or all of the resulting delay must be attributed to him. *State v. Houghton*, 2010 MT 145, ¶ 23, 357 Mont. 9, 234 P.3d 904. When an accused "avoids being brought to trial some or all of the responsibility for the delay should be attributed to him." *State v. Lacey*, 2010 MT 6, ¶ 18, 355 Mont. 31, 224 P.3d 1247.

¶17 We apply these same considerations to the present case. The record demonstrates that Eystad received ample notice that he must attend the Justice Court proceedings, but he chose to be "voluntarily absent" until he was arrested some years later. This situation, like those in the cases discussed above, weighs heavily against Eystad in the speedy trial analysis when evaluating the responsibility for the delay. In this case involving simple misdemeanor traffic offenses, it is not appropriate to assign any significant responsibility to the State to go out and find Eystad. *See, e.g., Lacey*, ¶¶ 6-9; *State v. Longhorn*, 2002

MT 135, ¶¶ 12-14, 310 Mont. 172, 49 P.3d 48 (both cases describing law enforcement efforts to apprehend suspects charged with felony offenses).

¶18 Factor three considers the defendant's response to the delay. Factually, the only evidence of Eystad's response to the situation is his assertion that he has lived at the same address for a number of years and that he was not actively trying to disguise his whereabouts. The defendant in *Hodge* made a similar argument that the Justice Court rejected, concluding that factor three should be weighed heavily against Hodge because he "effectively absconded" from the court proceedings and thereby "demonstrated no desire to be brought to trial at all, let alone brought to trial quickly." *Hodge*, ¶ 22. We agreed with this conclusion in that case and similarly apply it here. Eystad also "effectively absconded" from the proceedings and showed no desire to resolve the criminal charges. His apparent decision to continue driving for three years while his license was suspended is overwhelming evidence that he had no desire to go to trial. We conclude that factor three weighs heavily against him in the speedy trial analysis.

¶19 Factor four requires an analysis of the prejudice to the defendant resulting from the delay in bringing the charges to trial. Interests considered in this regard are preventing oppressive pretrial incarceration, minimizing the anxiety and concern resulting from unresolved criminal charges, and limiting impairment to the accused's ability to defend the charges. *Ariegwe*, ¶ 111. Eystad relies upon a presumption of prejudice arising from the length of the delay, and this Court has recognized that presumptive prejudice can play a part in the speedy trial analysis. *Hodge*, ¶ 24. However, presumptive prejudice will not weigh heavily in favor of the defendant except

8

in the "few and far between" cases involving government bad faith or other egregious conduct. *Hodge*, ¶ 25.

¶20     Here there is no evidence of any actual disruption to Eystad's life or to the other interests addressed in factor four. The fact that his "hiatus from the proceedings" came to an end with his eventual arrest is strong evidence of his disregard of the entire process. The vague assertions in Eystad's briefing—such as that he was prejudiced by driving with a suspended license for several years—are directly attributable to Eystad's own decisions and are not supported by actual evidence.

¶21     In this case there is no evidence of actual prejudice to Eystad. Finding presumptive prejudice that might arise solely from the length of time would be a disservice to the cause of justice. Defendants who fail to appear for court proceedings or who voluntarily absent themselves to avoid prosecution will not be heard on a claim of presumed prejudice resulting from the self-induced delay.

¶22     In summary, in this case the time between the initial charges and the eventual trial date is sufficient to trigger the speedy trial inquiry. We find that the delay resulted from Eystad's decision to voluntarily absent himself from the Justice Court's proceedings and that this factor weighs very heavily against Eystad. The record also shows that Eystad evidenced no interest of any kind in a prompt resolution of the charges and that he demonstrated no prejudice to his interests arising from his self-induced delay in the proceedings. We conclude that under the facts of this case Eystad was not denied his right to a speedy trial and that the courts below properly denied his motion to dismiss.

## CONCLUSION

¶23    The conviction is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE