DA 12-0275

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 153

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

MICHAEL JAMES STEIGELMAN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 09-417
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender; Kristen L. Larson, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant
            Attorney General, Helena, Montana

            Scott Twito, Yellowstone County Attorney; Victoria Callender, Deputy
            County Attorney, Billings, Montana

Submitted on Briefs:   February 20, 2013
Decided:   June 6, 2013

Filed:

_____

Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 The State of Montana (State) charged Michael James Steigelman (Steigelman) with felony DUI and two misdemeanors on July 29, 2009. Steigelman filed a motion to dismiss the charges based on an alleged violation of his right to a speedy trial on June 1, 2010, in the Thirteenth Judicial District Court, Yellowstone County. The District Court denied Steigelman's motion. Steigelman later entered a guilty plea to DUI pursuant to a plea agreement with the State. In return, the State agreed to drop the two misdemeanor charges. Steigelman appeals the District Court's denial of his motion to dismiss on the speedy trial grounds. We affirm.

¶2 We address on appeal whether the State violated Steigelman's constitutional right to a speedy trial.

**FACTS AND PROCEDURAL BACKGROUND**

¶3 A Billings, Montana police officer heard a loud crash at an intersection on the evening of July 29, 2009. The officer saw a vehicle, driven by Steigelman, drive onto the road's center cement median. Steigelman had struck a road sign and broke it off its mount. The officer observed Steigelman then swerve back onto the road. The officer stopped Steigelman. The officer approached him and immediately noticed that Steigelman's eyes were bloodshot, that Steigelman's speech was slurred, and that Steigelman smelled of alcohol. Steigelman admitted to having hit the sign and told the officer he had consumed "about eight to ten beers." Steigelman failed to complete the standard field sobriety tests. He also refused to provide a breath sample.

2

¶4     The State charged Steigelman with felony DUI and two misdemeanors. Steigelman appeared for his arraignment on August 3, 2009. The court released Steigelman on bail on August 6, 2009, after he had spent eight days in jail.

¶5     The District Court originally set Steigelman's omnibus hearing for November 9, 2009, and his trial for January 19, 2010. Steigelman did not appear at the November 9, 2009, omnibus hearing. Steigelman's appointed counsel advised the court at the hearing that Steigelman and he had not been in contact. Steigelman's counsel indicated that he planned to seek a continuance of the trial.

¶6     The District Court designated a triple homicide case as the number one trial setting for January 19, 2010. This conflict required the court to reschedule Steigelman's trial. The District Court reset the omnibus hearing for March 29, 2010, and the trial for June 8, 2010. Steigelman attended the omnibus hearing with counsel from the Office of the Public Defender. The District Court granted a motion to substitute Jeffrey Michael as Steigelman's counsel on May 18, 2010. The court's order included a notation of the June 8, 2010, trial date. Steigelman filed a motion to continue the trial on May 27, 2010. Steigelman waived his right to speedy trial as part of his motion. The District Court set a new trial date of September 28, 2010.

¶7     Steigelman filed a motion to dismiss the charges against him on June 1, 2010, based on the State's alleged violation of his right to speedy trial. The parties briefed the motion and the court conducted a hearing on October 4, 2010. The court heard testimony from Steigelman, the arresting officer, and the State's counsel in the triple homicide case that had

3

prompted the court to reset Steigelman's first trial date.

¶8      The court agreed with Steigelman that the duration of the pretrial delay justified further review. The court attributed most of the delay to the State due to institutional causes. The court observed that Steigelman had made efforts to proceed to trial, but that he had not complained about previous delays. The court further observed that Steigelman had served only eight days in jail and that he had been unable to articulate any anxiety or concern beyond that normally associated with a person accused of a crime.

¶9      The court opined that pretrial delay likely had not caused prejudice to Steigelman's defense, despite Steigelman's claim of being unable to locate two potential witnesses. The court noted that Steigelman's admission to having consumed eight to ten beers on the night of his arrest raised questions as to how those two potential witnesses—a former girlfriend and a bartender who had observed Steigelman earlier that evening— could have assisted his defense. The court noted further that the State's only witness, the arresting officer, had been available for questioning and remained able to testify at trial.

## STANDARD OF REVIEW

¶10     We review a district court's denial of a motion to dismiss for lack of a speedy trial to determine whether the district court's findings of fact were clearly erroneous. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. Whether the factual circumstances establish a speedy trial violation presents a question of law. *Ariegwe*, ¶ 119. We review de novo a district court's conclusion of law. *Ariegwe*, ¶ 119.

## DISCUSSION

4

¶11   *Whether the State violated Steigelman's constitutional right to a speedy trial?*

¶12   The Sixth Amendment and Fourteenth Amendment to the United States Constitution, and Article II, Section 24 of the Montana Constitution, guarantee a criminal defendant the right to a speedy trial. We revised our framework to analyze speedy trial claims in *Ariegwe* to track the balancing approach outlined by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). A court must balance four factors in considering a claim of denial of the right to speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused. *State v. Billman*, 2008 MT 326, ¶ 11, 346 Mont. 118, 194 P.3d 58; *Ariegwe*, ¶ 20.

¶13   None of the four speedy trial factors, on its own, is dispositive. We must consider the related factors together with other relevant circumstances. *Ariegwe*, ¶ 153. Moreover, each factor's significance depends on the unique facts and circumstances of the case. *Ariegwe*, ¶ 105. We now proceed to review and balance the four speedy trial factors.

¶14   *Length of the delay.* We consider the length of delay from the date that the State files the charges until the defendant's trial date. Here 426 days elapsed between the time that the State charged Steigelman on August 3, 2009, and his September 28, 2010, trial date. We have established 200 days, regardless of fault for that delay, as the length of time that triggers further speedy trial analysis. *Ariegwe*, ¶ 62. No one contests that Steigelman's delay exceeded the 200-day trigger. Thus, we must analyze the other speedy trial factors

¶15   *Reasons for the delay.* Under this factor, the court identifies and attributes responsibility for each period of delay in bringing the accused to trial. The weight assigned

5

to a period of delay depends on the type of delay and possible motive, if any, behind the delay. *Ariegwe*, ¶ 67. We characterize as institutional that delay due to the inherent nature of the criminal justice system. Institutional delay weighs less heavily than intentional attempts by the State to delay the trial. *State v. Stops*, 2013 MT 113, ¶ 27, ___ Mont. ___, ___ P.3d ___; *Ariegwe*, ¶ 108.

¶16 The District Court did not issue findings as to each period of delay. The court attributed the bulk of the total delay, however, to the State as institutional delay. For example, the 174 days between Steigelman's arrest and the first trial date represents institutional delay attributable to the State. The court also attributed to the State the 140 days between the first trial date and the second trial date. This 140-day delay occurred as a result of a scheduling conflict between Steigelman's first trial date and a deliberate homicide trial also set for that same date. We agree with the District Court that institutional delay properly attributed to the State constituted 314 days of the delay.

¶17 The third period of delay consisted of 112 days between Steigelman's second trial setting on June 8, 2010, and his third trial setting on September 28, 2010. The court attributed this 112-day period to Steigelman due to his request for more time to investigate and develop his speedy trial claim. We agree. The 314 days that the District Court attributed to the State, on its own, however, exceeds the 200-day trigger for further speedy trial analysis. *Ariegwe*, ¶ 62.

¶18 *The accused's responses to the delay.* Under the third speedy trial factor, the court evaluates the totality of the accused's responses to the delay to ascertain "whether the

6

accused actually wanted a speedy trial." *Ariegwe*, ¶ 79. An accused certainly has "'no duty to bring himself to trial.'" *Ariegwe*, ¶ 82 (quoting *Barker*, 407 U.S. at 527, 92 S. Ct. at 2190). The defendant's responses to the delay nevertheless represent "an 'important' consideration" in determining whether a defendant's right to a speedy trial has been violated. *Ariegwe*, ¶ 76, (quoting *Barker*, 407 U.S. at 534, 92 S. Ct. at 2194).

¶19 We consider the totality of a defendant's responses to the delay to ascertain whether the defendant "actually wanted a speedy trial" and what weight is to be given to the other three factors in our analysis. *Ariegwe*, ¶ 79. We consider circumstances such as the "timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, [and] the accused's pretrial conduct (as that conduct bears on the speedy trial right)." *Ariegwe*, ¶ 80.

¶20 The District Court recognized that, in many cases, "the last thing the defendant really wants is a speedy trial." The court opined that a defendant often wants "to be able to complain about not having a speedy trial." The court ultimately rejected the notion, however, that Steigelman wanted to postpone his trial. The court concluded that Steigelman's conduct did not "fit[] the description" of a defendant seeking to manufacture a speedy trial violation. Nothing in the record leads us to disagree with the District Court's conclusion that Steigelman's actions did not constitute a tacit attempt to manufacture a speedy trial claim. *State v. Sartain*, 2010 MT 213, ¶ 25, 357 Mont. 483, 241 P.3d 1032.

¶21 *Prejudice to the accused.* We finally analyze the prejudice to Steigelman that may have occurred as a result of the State's delay in bringing him to trial. We consider three sub-

factors when we evaluate prejudice to the accused: (1) oppressive pretrial incarceration; (2) undue prolonged disruption of the accused's life and aggravated anxiety or concern; and (3) whether the delay has impaired the accused's ability to present an effective defense. *Ariegwe*, ¶ 88 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992)). The delay exceeded 200 days and thus we require less proof of prejudice from the defendant and a greater showing of lack of prejudice from the State. *Stops*, ¶ 41.

¶22     Steigelman suffered minimal pretrial incarceration. The court released Steigelman on bond eight days after his arrest. The four days of pretrial incarceration served by the defendant in *Stops* comports with Steigelman's experience. *Stops*, ¶ 42. We rejected a speedy trial claim in *Stops*. *Stops*, ¶ 46. By contrast, we affirmed a district court's determination of a speedy trial violation in *Billman* where the defendant spent 278 days in jail before his trial. *See Billman,* ¶ 39. The eight days that Steigelman spent in jail fails to rise to the level of oppressive pretrial incarceration. *Stops*, ¶ 42; *Billman*, ¶ 39.

¶23     With respect to prolonged disruption, Steigelman argued that he had suffered stress due to the fact that his case had not moved ahead rapidly. We have recognized that criminal charges engender a certain amount of inherent anxiety and concern. *Billman*, ¶ 43. We focus on the extent to which the pretrial delay "has unduly prolonged the disruption of the accused's life or aggravated the accused's anxiety or concern." *Billman*, ¶ 43, citing *Ariegwe*, ¶ 97. The generalized stress described by Steigelman differs little from the stress that any person accused of a crime would suffer.

¶24    Other factors that we consider under this provision include employment loss, financial and economic loss, and whether the accused's associations were curtailed. *Ariegwe*, ¶ 96. Steigelman claimed that a condition of his release on bond prevented him from driving. He testified that this condition forced him to ask his boss to drive him 200 miles for each of his court appearances. The State points out that Steigelman admitted that his Illinois driver's license had expired before his arrest on the DUI charge. Steigelman failed to present evidence that he had obtained another valid license. It appears that the expiration of Steigelman's Illinois driver's license would have prevented him from driving lawfully even without the condition imposed by the court.

¶25    We agree with the District Court that Steigelman failed to present sufficient evidence to establish that the State's institutional delay in bringing him to trial caused undue prolonged disruption of his life and aggravated anxiety or concern beyond what any person accused of a crime would suffer. *Billman*, ¶ 43. Steigelman did not put on evidence that the pretrial delay had caused him to lose his job or suffer economic loss. It appears that Steigelman maintained his employment throughout the period of pretrial delay as evidenced by his claim that his boss had to drive him to court appearances.

¶26    We likewise agree with the District Court that Steigelman failed to establish that the State's institutional delay inhibited his ability to present an effective defense. Steigelman argued to the District Court that his brief eight-day pretrial incarceration and the prolonged delay in this trial that followed left him unable to locate two potential witnesses. Steigelman claimed that his former girlfriend and the bartender who served him could testify as to how

9

much he had to drink before his arrest. Nothing in the record indicates that Steigelman's eight days of pretrial incarceration prevented him from locating his former girlfriend, whom he alleges had accompanied him for part of the night in question, and the bartender who served him. Steigelman could testify with no more specificity than the fact that he had broken up with his former girlfriend "not much longer after the arrest."

¶27 Steigelman further testified as to efforts to locate the bartender who had served him. He claimed that the owner of the bar had been unable to locate the records due to the fact that "it's been so long back." Steigelman did not explain whether he attempted to locate the bartender in the days and weeks after his arrest. More importantly, the relevancy of the testimony of these two potential witnesses seems diminished in light of Steigelman's admission that he had consumed eight to ten beers on the night of his arrest. The arresting officer further observed Steigelman's vehicle drive onto the median and strike a road sign. The arresting officer also claimed to have witnessed Steigelman's bloodshot eyes, his slurred speech, and the fact that Steigelman emanated an odor of alcohol. The arresting officer had been available for questioning during the entirety of the pretrial delay.

¶28 Steigelman argues finally that the District Court improperly gave too much weight to the State's claimed lack of prejudice suffered by Steigelman from the institutional delay. He claims that the other three speedy trial factors—length of the delay, undue stress and anxiety caused by the delay, and his response to the delay—weigh heavily in his favor. He contends that these three speedy trial factors should tip the scales in favor of a speedy trial violation caused by the State's institutional delay. Steigelman urges the Court to determine that the

10

426-day delay in his trial on uncomplicated charges was "simply too long." He argues that the State alone had the duty to bring him to trial within an amount of time commensurate with his right to speedy trial.

¶29    The impairment of the accused's defense from a speedy trial violation constitutes the most important factor in our prejudice analysis. *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692. The inability of the defendant "adequately to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692. We agree with the conclusions reached by the District Court. Steigelman admittedly suffered substantial pretrial delay largely attributed to the State under institutional delay. We balance this substantial delay with the limited pretrial incarceration of eight days that Steigelman suffered. Steigelman failed to demonstrate that the delay aggravated his anxiety beyond the anxiety level expected of a person accused of a crime. Finally, Steigelman failed to demonstrate that he suffered substantial prejudice to the ability to defend himself. The State satisfactorily showed a lack of prejudice in Steigelman's ability to defend against the charges. *Stops*, ¶ 45. On balance, these considerations lead us to agree with the District Court that the State did not violate Steigelman's right to a speedy trial.

¶30    Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON

/S/ JIM RICE

Justice Beth Baker, concurring.

¶31    I concur in the disposition of Steigelman's appeal, but I write to supplement the Court's evaluation of the fourth *Ariegwe* factor. Steigelman expressly argues that where the length of delay is presumptively prejudicial and each of the first three speedy trial factors weighs in his favor, the District Court erred by placing a high burden on him to demonstrate prejudice. Steigelman points out that the District Court denied his motion to dismiss based on its finding that "the prejudice to the defendant is just simply not great in this case." Noting that the State bears the burden of bringing him to trial, and since the delay was over twice the 200-day trigger, Steigelman argues that it was not his burden to prove "great" prejudice, but the State's job to make a "highly persuasive showing that [he] was not prejudiced by the delay." *State v. Burns*, 2011 MT 167, ¶ 22, 361 Mont. 191, 256 P.3d 944.

¶32    Steigelman raises a point on which our post-*Ariegwe* decisions have touched but that we have not further developed in analyzing the prejudice factor of the speedy trial analysis. That is, while *Ariegwe* counsels that no one factor is determinative but that all must be considered together with other relevant circumstances (Opinion, ¶ 13), must prejudice be affirmatively demonstrated in order for an accused's speedy trial claim to prevail?

¶33    We made clear in *Ariegwe* that the length of delay plays a significant role in evaluating the prejudice factor. "Thus, the further the delay stretches beyond the trigger

12

date, the stronger is the presumption under Factor Four that the accused has been prejudiced by the delay." *Ariegwe,* ¶ 107. In that case, and in several since, we have noted that as the delay increases beyond 200 days, "the State's burden to *justify the delay* increases." *State v. Billman*, 2008 MT 326, ¶ 18, 346 Mont. 118, 194 P.3d 58 (citing *Ariegwe*, ¶¶ 56, 62) (emphasis added); *see also State v. Hendershot*, 2009 MT 292, ¶ 28, 352 Mont. 271, 216 P.3d 754; *State v. Stops*, 2013 MT 131, ¶ 25, 370 Mont. 220, ___ P.3d ___. Importantly, justification for the delay is part of Factor Two of the speedy trial analysis, not the prejudice factor. We observed in *Ariegwe* that the length of delay plays a significant role in linking the second and fourth factors. Thus, as the delay stretches further beyond the 200-day trigger date, the required showing of prejudice lessens and the required showing of justification increases. *Ariegwe*, ¶ 107.

¶34 We also have referred to the "State's burden" in discussing the prejudice factor, ruling in *State v. Couture*, 2010 MT 201, ¶¶ 49, 55, 357 Mont. 398, 240 P.3d 987, that the State was required to "make 'a very persuasive showing'" and that the State bore "a heavy burden to show" that the defendant was not prejudiced by a 924-day delay in bringing the charges to trial. In *Couture*, while we stated that "the accused's failure to submit affirmative proof of prejudice is not fatal to a speedy trial claim," ultimately we concluded that the defendant had "not demonstrated an impaired ability to present an effective defense as a consequence of the delay," and we therefore rejected his speedy trial claim. *Couture*, ¶¶ 67, 70.

¶35 Similarly, in *State v. Lacey*, 2010 MT 6, ¶¶ 24-26, 355 Mont. 31, 224 P.3d 1247, we rejected the defendant's speedy trial claim notwithstanding a more than eight-year delay,

13

based on the combination of his intentional actions in avoiding being brought to trial and the lack of evidence of direct prejudice to his defense. We noted that, "under certain circumstances, where the length of delay is great, the accused's burden of presenting affirmative evidence of prejudice is *lessened*." *Lacey*, ¶ 23 (citing *State v. Hardaway*, 2009 MT 249, ¶ 26, 351 Mont. 488, 213 P.3d 776) (emphasis added).

¶36 Our cases reflect what the U.S. Supreme Court held directly in *Doggett*: that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2692. The Court recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Although it must be considered together with the other factors and "cannot alone carry" a speedy trial claim, presumptive prejudice "is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett*, 505 U.S. at 655-56, 112 S. Ct. at 2692-93. The Court made clear that the government's negligence in bringing an accused to trial is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. at 657, 112 S. Ct. at 2693. The circumstances in *Doggett* represented the "middle ground" between bad-faith conduct by the government—in which case its eight-and-a-half-year delay in bringing the defendant to trial "would present an overwhelming case for dismissal"—and diligent attempts by the government to locate and prosecute the defendant—in which case his speedy trial claim would fail "as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense." *Doggett*, 505 U.S. at 656-57, 112 S. Ct. at

14

2693.

¶37 As we held in *Ariegwe*, "it is doubtful that the mere passage of time could 'conclusively' establish that the accused has been denied his or her right to a speedy trial." *Ariegwe*, ¶ 60. Thus, although there may be cases where the absence of prejudice will not defeat a speedy trial claim, those cases will be few and far between—most likely a case involving government bad faith or conduct similarly egregious to that involved in *Doggett*, where the government's negligence caused delay six times longer than the trigger for review and where "the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, . . . nor persuasively rebutted [by the government]." *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. That combination of factors is not present here. While, as Steigelman notes, several trial dates in this case simply "came and went without action" from the State to bring him to trial, the delay in this case largely was institutional and not attributable to either bad faith or negligence by the State of the sort that would entitle a presumption to carry the day without any showing of actual prejudice. *Ariegwe*, ¶ 60 (noting *Doggett*'s combination of excessive delay and the government's lack of diligence). As the Court holds (Opinion, ¶ 29), the evidence in this case fell short in that showing and the District Court properly denied Steigelman's motion.

/S/ BETH BAKER

Justice Laurie McKinnon joins in the concurring Opinion of Justice Baker.

15

/S/ LAURIE McKINNON