FILED

05/11/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0646

DA 19-0646

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 117N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

NAVA CRUZITA CONNOR,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. BDC-2017-276
                  Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brent William Flowers, Beebe & Flowers, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Damon Martin, Assistant
      Attorney General, Helena, Montana

      Leo Gallagher, Lewis & Clark County Attorney, Fallon Stanton, Deputy
      County Attorney, Helena, Montana

Submitted on Briefs:  March 17, 2021

Decided:  May 11, 2021

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 Nava Cruzita Connor (Nava) appeals from the July 5, 2019 Order of the First Judicial District Court, Lewis and Clark County, denying her motion to dismiss on speedy trial grounds. We affirm.

¶3 Following a June 10, 2017 traffic incident—Nava crashed her vehicle into a parked car—a jury trial was conducted December 11-14, 2017, where Nava was tried for six counts alleged in the second amended information filed by the State: Count I – Aggravated DUI (4th or subsequent offense), a felony; Count II – Aggravated DUI per se (4th or subsequent offense), a felony (alternative to Count I); Count III – Failure to Stop After Striking an Unattended Vehicle, a misdemeanor; Count IV – Tampering with or Fabricating Physical Evidence, a felony; Count V – Criminal Possession of a Dangerous Drug (marijuana) (1st offense), a misdemeanor; and Count VI – Criminal Possession of Drug Paraphernalia (1st offense), a misdemeanor. The jury found Nava guilty of alternative Count II, as well as Counts III, V, and VI, and not guilty of Count IV. The matter was originally set for sentencing on January 31, 2018, but Nava filed three successive motions for continuance, citing her need to attend mandatory training for her

2

employment, that she "require[d] additional time to get her affairs in order prior to sentencing," and the litigation schedule of her counsel. These continuances were granted by the District Court and sentencing was rescheduled for April 18, 2018.

¶4 On April 18, 2018, Nava filed another motion to continue the sentencing hearing based upon a decision this Court had rendered the day before, on April 17, 2018, in *State v. Zimmerman*, 2018 MT 94, 391 Mont. 210, 417 P.3d 289 (*Zimmerman*). There, this Court reversed a district court decision that denied a defendant's pretrial motion to stipulate to his prior DUI convictions for purposes of his trial on an aggravated DUI charge. *Zimmerman*, ¶ 38. The District Court continued the sentencing and set a briefing schedule that originally was to conclude on May 25, 2018. However, Nava moved to suspend the briefing schedule in light of the petition for rehearing that had been filed before this Court in *Zimmerman*, and the District Court suspended the briefing without date, pending resolution of the *Zimmerman* rehearing petition. Upon denial of the rehearing petition on May 22, 2018, the District Court reset the briefing schedule, which was then scheduled to conclude on July 9, 2018.

¶5 However, on June 18, 2018, Nava proceeded to file a motion for new trial, on which the District Court conducted a hearing. Based upon a theory that her pre-trial request for a bifurcated trial, wherein she would be first tried for DUI and then secondly tried for aggravated DUI, had been tantamount to the stipulation offered by the defendant in *Zimmerman*, Nava argued her case was equivalent to *Zimmerman* and likewise flawed,

requiring a new trial. On July 24, 2018, the District Court issued an order denying Nava's motion for a new trial, and sentencing was set for August 29, 2018.

¶6 On August 10, 2018, Nava filed a renewed request for a new trial, this time arguing the defense had indeed offered to stipulate to the prior DUI convictions after her request for bifurcation was denied. A partial transcript from a December 11, 2017, hearing was obtained that confirmed that Nava's counsel had indeed offered to stipulate to the prior DUI convictions and that this offer had been denied. As a result of Nava's arguments, on September 26, 2018, the District Court entered an order for a new trial.

¶7 Unfortunately, the court's order was inadvertently not served upon the parties. After this was discovered, the District Court entered an order on October 10, 2018, setting a new trial date for March 11, 2019. Six days later, on October 16, the State appealed the District Court's September 26, 2018 order granting Nava a new trial. On February 19, 2019, the State voluntarily dismissed the appeal, this Court's Cause No. 18-0589. The next day, at a February 20 status conference, Nava's counsel withdrew from her representation. Nava appeared pro se at a March 6 hearing, at which time she represented that her counsel had been rehired and would represent her after all.

¶8 Following dismissal of the appeal on February 19, 2019, the appeal case was not closed until March 7, 2019, and the record did not arrive on return to the District Court until March 12, 2019, a day after the March 11 trial setting. On March 20, with the March 11 trial date having passed, the District Court rescheduled the trial for October 15, 2019. On April 24, the State filed a motion requesting that an earlier trial date be set.

Nava's counsel objected to the motion for an earlier date, but filed a motion to dismiss for lack of speedy trial on May 7. After a hearing was held May 10, the District Court moved up the trial date to July 29, 2019.

¶9 At a June 12 hearing, Nava advised that she would not seek retrial on Counts III, V, and VI, on which she had been convicted, and the parties agreed the trial would be conducted only on Counts I and II. On July 5, 2019, the District Court issued an order, at issue in this appeal, which denied Nava's speedy trial motion. On July 26, 2019, Nava changed her plea pursuant to an agreement with the State, wherein she pled guilty to Count II and the State dismissed Count I, and was sentenced on all of the convicted charges. As part of the agreement, Nava reserved the right to appeal the District Court's denial of her motion to dismiss for lack of speedy trial. She appeals, raising the issue of speedy trial.

¶10 An alleged violation of the right to a speedy trial is a question of constitutional law we review de novo. *State v. Steigelman*, 2013 MT 153, ¶ 10, 370 Mont. 352, 302 P.3d 396 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). A district court's factual findings are reviewed for clear error. *State v. Zimmerman*, 2014 MT 173, ¶ 11, 375 Mont. 374, 328 P.3d 1132 (*State v. Zimmerman*) (citing *Ariegwe*, ¶ 119). Whether factual circumstances establish a speedy trial violation presents a question of law. *Steigelman*, ¶ 10 (citing *Ariegwe*, ¶ 119).

¶11 A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution. We have determined that 200 days or more of delay, regardless of

5

fault for the delay, triggers a speedy trial analysis. *Ariegwe*, ¶ 62. Our framework for analyzing speedy trial claims requires the Court to balance four factors in considering a claim of denial of the right to a speedy trial: "(1) length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused." *Steigelman*, ¶ 12. None of the factors are alone dispositive—their respective import may fluctuate according to the unique facts and circumstances of the case—and each must be considered together with other relevant circumstances. *Ariegwe*, ¶¶ 105; 112; 153. We analyze the prejudice factor upon three sub-factors, of which impairment of the defense "constitutes the most important factor." *Steigelman*, ¶ 29. We now turn to these considerations.

*Length of the delay*.

¶12 "[I]n cases of appeal or an order for a new trial, the time for trial should begin running from the date of the order granting the new trial." *State v. Nelson*, 251 Mont. 139, 142, 822 P.2d 1086, 1086 (1991). Here, Nava was granted a new trial on September 26, 2018, and 306 days elapsed between then and the July 29, 2019 trial setting.

¶13 Nava argues the tally of days should have been triggered by her request for a new trial on April 18, 2018, which would add 163 days to the total time. In support, she contends the State's opposition to a new trial was meritless in light of this Court's decision in *Zimmerman*. However, in this regard, Nava did not claim to have offered to stipulate to her prior DUI convictions, as in *Zimmerman*, until August 10, some four months later. Rather, her position was that the District Court should extend *Zimmerman* to include

6

requests for trial bifurcation, which she had also made. Consequently, we are not persuaded that we should deviate from the general rule, which calculates the time to be 306 days.

*Reasons for the delay*.

¶14 A court must determine which party is responsible for specific periods of delay, allocating the total time of the delay between the parties. *Steigelman*, ¶ 15. The weight assigned to each period of delay is determined according to the nature of and motive behind the delay. *Steigelman*, ¶ 15 (citing *Ariegwe*, ¶ 67). Intentional or bad faith attempts to delay weigh heavily against the State. *Ariegwe*, ¶ 67. Institutional delays—those due to the inherent nature of the criminal justice system—are attributable to the State but weigh less heavily than intentional delay. *Steigelman*, ¶ 15; *Ariegwe*, ¶ 108. Delays that are the result of negligence or a lack of due diligence weigh less heavily against the State than intentional delays, occupying a "middle ground" between intentional and institutional delay. *Ariegwe*, ¶ 69.

¶15 The District Court characterized the 14-day delay between September 26 to October 10, 2018, as institutional because it resulted from a failure to serve the new trial order upon the parties. Regarding the 133 days from October 10, 2018, the date a new trial date was set, until February 20, 2019, the date of the hearing following the State's voluntary dismissal of its appeal, at which Nava's counsel informed the court of his withdrawal from Nava's representation, the District Court found the delay to be institutional. Nava argues this time should be non-institutional delay weighing more heavily upon the State. While

acknowledging that the delay caused by an interlocutory appeal would not always be weighed heavily against the State, Nava argues it should be here because, in light of *Zimmerman*, "the State's appeal was frivolous, if not speciously pursued."

¶16 As the District Court noted, determining how to weigh appeal delay against the State depends upon the nature of the appeal. "[T]angential or frivolous" appeals weigh heavily against the State, but appeals lacking "bad faith or dilatory purposes" are considered institutional delay that weigh less heavily. *United States v. Loud Hawk*, 474 U.S. 302, 316, 106 S. Ct. 648, 655 (1986). While voluntary dismissal may indicate a party's lack of confidence in an appeal, it does not render the appeal frivolous per se. The State offers that it had valid reasons for the appeal, including that it had expended significant resources on the trial and was reticent to "start the entire proceedings over from scratch," and believed the District Court had ordered a new trial without properly reviewing transcripts germane to the decision. We note that Nava herself acknowledged in the District Court that the court had applied the previously-controlling case of *State v. Meyer*, 2017 MT 124, 387 Mont. 422, 396 P.3d 1265, to deny her motion to bifurcate the trial, which authority had been only recently issued by this Court prior to Nava's trial. As late as June of 2019, there remained a dispute on this Court about the merits of the *Zimmerman* holding. *See State v. Holland*, 2019 MT 128, ¶ 22, 396 Mont. 94, 443 P.3d 519 (Rice, J., dissenting) ("The Court has based its decision on *Zimmerman*, which in my view, was wrongfully decided and should be overturned. Today's decision perpetuates *Zimmerman's* misinterpretation of *Meyer*."). Further, the appeal, by itself, did not delay the March 2019 trial date. We

8

conclude the District Court did not err by weighing the appeal time against the State as institutional delay.

¶17 The day after the appeal's dismissal, Nava's counsel withdrew, stating he had intended to withdraw all along, but had not done so because the appeal was pending. Describing Nava's counsel's withdrawal as a "disappearance" that resolved when he returned, the District Court attributed the 28-day delay from February 20 to March 20, 2019, to Nava, reasoning the State had not requested continuance of the March 11 trial and, but-for defense counsel's withdrawal, the trial could have and would have been conducted at that time. Nava argues that "once the State determined to file a meritless appeal on October 16, 2018, there was no reasonable likelihood of a March trial," and that, even if her counsel would not have withdrawn before reappearing March 6, there would have been no trial on March 11 because this Court did not return the record to the District Court until March 12. However, this argument ignores the reality that the State and the District Court were prepared to move forward with a March 11 trial prior to Nava's counsel's withdrawal. The March 11 trial date was cancelled before the delay in the return of the district court record was realized and as a direct result of defense counsel's temporary absence.

¶18 Finally, the District Court determined that a congested court docket, attributable as an institutional delay to the State, caused the final 131-day delay from March 20 until the July 29, 2019 trial setting, but even so, laid some blame upon the defense:

> [T]he Court does not find it entirely accurate to describe this March to July period as exclusively institutional delay. . . . But-for counsel's questionable [withdrawal], this case would already have been tried in March 2019. In a sense, Nava's counsel's brief disappearance is the one and only reason that

9

this 131-day period of institutional delay occurred. While it would be improper to attribute this delay to Nava, it is also inaccurate to characterize it as normal institutional delay. Accordingly, the Court acknowledges that Nava is the sole reason the March 2019 trial did not occur and gives the 131-day period of institutional delay very little significance because of Nava's role in bringing about this institutional delay.

The State argues this period should be attributed to Nava because she caused the March 11 trial to be postponed and objected to the State's attempt to move up the trial date. Nava counters that, since the State's frivolous appeal caused the delay, the time should be apportioned to and weighed heavily against the State. We reject both parties' arguments and conclude the District Court did not err in assessing the time against the State as institutional delay. As noted above, Nava has failed to demonstrate the State's appeal was frivolous. Further, a delay rooted in court congestion should be deemed institutional. We are mindful of the District Court's reasoning, stated above; though the delay is characterized as institutional, Nava's contributing actions allow little weight to be given to it.

¶19 We concur with the District Court's determination that, of the 306 days of delay, 28 were attributable to Nava, while 278 were institutional delay attributable to the State. Given the nature of institutional delay and the District Court's findings from the record, we conclude the State's delay does not weigh heavily in Nava's favor.

*Nava's responses to the delay*.

¶20 Under the third factor, "the court evaluates the totality of the accused's responses to the delay to ascertain 'whether the accused actually wanted a speedy trial.'" *Steigelman*, ¶ 18 (quoting *Ariegwe*, ¶ 79). Our conclusions regarding this factor impact the balancing

10

with the other factors. *Ariegwe*, ¶ 76 (noting that a defendant seemingly not wanting to be tried may counterbalance extraordinary delay). "The timing and number of instances in which the accused objects to pretrial delay are not talismanic" and neither motions to dismiss on speedy trial grounds nor acquiescing to prosecutorial delay are conclusive of the accused's desire. *Ariegwe*, ¶ 80. Rather, we consider circumstances such as the "timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, [and] the accused's pretrial conduct[.]" *Ariegwe*, ¶ 80 (citing *Loud Hawk*, 474 U.S. at 314, 106 S. Ct. at 655-56).

¶21     Nava argues she "could nearly not complain quicker or more poignantly" than she did. However, the record indicates that the March 2019 trial setting was a casualty of defense counsel's withdrawal from the case before re-appearance, which the District Court characterized as "questionable." At the March 20 hearing, Nava acquiesced to an October 2019 trial date. Although she notified the court of her intent to file a speedy trial motion, Nava opposed the State's April 25 motion to set a status conference, reasoning that defense counsel needed additional time to file motions and that the law firm "estimates that it has approximately 10 to 20 cases that will likely go to jury trial." While she did file a speedy trial motion to dismiss on May 7, leading to a May 10 hearing, she opposed moving the trial up to July 29, 2019. Our review of the entirety of the proceeding, detailed above, reveals the conclusion that Nava sought numerous delays throughout the proceeding to secure her advantage, and we cannot conclude upon all the circumstances that her desire

11

for a speedy trial was definite or poignant. We conclude the District Court did not err by assigning little weight to this factor.

*Prejudice*.

¶22 The final factor is the prejudice to Nava that may have occurred as a result of the delay. There are three subfactors that we analyze when considering prejudice: "(1) oppressive pretrial incarceration; (2) undue prolonged disruption of the accused's life and aggravated anxiety or concern; and (3) whether the delay has impaired the accused's ability to present an effective defense." *Steigelman*, ¶ 21.

¶23 Nava spent only one day in jail. She was subject to Secure Continuous Remote Alcohol Monitoring (SCRAM), which required only that she blow into a device at two predesignated times every day. While SCRAM monitoring is "attractive to defendants precisely because it is less oppressive than pretrial incarceration[,]" such constant "monitoring and its cost . . . nevertheless constitute[s] an impairment of [the accused's] liberty" that supports a claim of prejudice. *State v. Zimmerman*, ¶ 31. Nava's payment of "almost $5,000" for the monitoring throughout the lengthy proceedings was offset by the ability to maintain her employment that SCRAM provided. She was also free to continue living with her family and was not restricted from interstate travel. While the defendant in *State v. Zimmerman* was subjected to wearing a SCRAM bracelet, which could be difficult to conceal, Nava was required only to breathe into a compact machine twice daily. We conclude the District Court did not err in finding Nava was not prejudiced by pretrial incarceration.

¶24 Nava testified that the looming criminal charge impacted her personal relationships, interfered with professional opportunities, caused her to seek biweekly appointments with a psychiatrist, and caused sleep deprivation. The District Court determined that her grievances were "part of the anxiety and concern inherent in being accused of a crime" and, since nothing indicated that the period of delay from October 2018 to the new trial date greatly compounded her concerns, "Nava's anxiety and concern [did] not weigh heavily in establishing that she had been prejudiced." Nava points to the public nature of arrest as a cause for her anxiety, but she was not long incarcerated, was permitted to use a compact SCRAM device, and enjoyed unrestricted travel. Anxiety was not prejudicially aggravated.

¶25 Impairment of the defense from a speedy trial violation "constitutes the most important factor in our prejudice analysis." *Steigelman*, ¶ 29. Though "affirmative proof of particularized prejudice is not essential to every speedy trial claim[,]" *Ariegwe*, ¶ 99, Nava produced nothing to indicate the delay impacted her defense. To the contrary, Nava was hesitant to move up the October 2019 trial date because she was not yet prepared. When the accused's actions demonstrate a desire not to be brought to trial, the likelihood of actual prejudice decreases. *Ariegwe*, ¶ 54. Further, while the risk of defense evidence, exhibits, and memories fading over time are possible, the risk decreases with a prior trial of judicially noticeable testimony and evidence. Nava's defense was not prejudicially impaired.

*Balancing*.

¶26    Balancing the four factors, the District Court correctly determined Nava's right to a speedy trial was not violated.  Under the facts of the case, the lack of intentional delay on the part of the State and the lack of prejudice from the delay outweighed the length of the delay.

¶27    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶28    Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON