FILED

07/20/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0020

DA 19-0020

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 183N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JACOB ANDREW SAUNDERS,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 17-285C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney, Erin Murphy, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  June 2, 2021

Decided:  July 20, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 Jacob Andrew Saunders (Saunders) appeals from his burglary and theft convictions, challenging the Decision and Order of the Eighteenth Judicial District Court, Gallatin County, which denied his motion to dismiss on speedy trial grounds. We affirm.

¶3 Saunders was arrested on July 9, 2017, for the theft of high-value personal property and four motor vehicles. He appeared before the justice court the following day, July 10, and the court appointed the Office of the Public Defender (OPD) to represent him. On August 2 he was charged by Information with five felonies: Burglary, in violation of § 45-6-204, MCA (Count I); Theft of a 2006 Chevy Silverado, in violation of § 45-6-301, MCA (Count II); Theft of a 2012 Ford F-350, in violation of § 45-6-301, MCA (Count III); Theft of a 2014 Ford F-350, in violation of § 45-6-301, MCA (Count IV); and Theft of a Porsche Cayenne, in violation of § 45-6-301, MCA (Count V). Saunders was held on $200,000 bond, which, ultimately, he did not post, and he was consequently incarcerated for the entire time period between his arrest and two-day jury trial on September 5-6, 2018, a period of 423 days.

2

¶4 Saunders' initial appearance in District Court was September 5, nearly one month after it was originally scheduled on August 9, due to a scheduling error. Saunders' attorney, Kirsten Mull Core, was not notified of the rescheduled initial appearance and did not appear, though fellow OPD attorney Diana Copeland was present and assisted Saunders in entering a not guilty plea. On September 13, Saunders appeared with Mull Core at a bail modification hearing, after which the District Court elected to reserve ruling on reduction of bail until presented with evidence of a "firm commitment" for Saunders' employment and housing. At an omnibus hearing on September 27, Mull Core requested a continuance. Mull Core was then replaced as attorney of record by Michael Sinks of the OPD on October 17, but on October 25, Mull Core appeared before the District Court at the rescheduled omnibus hearing and requested another continuance to allow Sinks to review the case.

¶5 OPD attorney Chad Glenn appeared for Saunders at the next hearing on November 29, 2017, indicating he had signed the substitution of counsel form "right before I walked in th[e] court[,]" leading to another continuance. Though not objecting to the continuance, the State expressed concern over the continuances in the case, noting that it will "be looking to set [the trial] in January [] because [Saunders has] been in custody this whole time." On January 11, 2018, James Lippert replaced Glenn as counsel and first appeared in court on January 31, at which time trial was set for June 4, 2018. On February 2, 2018, Saunders appeared with Lippert for another bail modification hearing,

but because no written evidence of employment or housing was again presented, the District Court denied reduction.

¶6     The next omnibus hearing was held on February 28, 2018, with Glenn standing in for Lippert as Saunders' counsel, at which time rescheduling of the trial was discussed. The District Court initially left the trial as scheduled, but on March 30, due to a conflict on its own trial calendar, it *sua sponte* rescheduled the trial date for July 23. The State thereafter advised the court that the new date fell within a different district court judge's trial month and that a courtroom was unlikely to be available. Consequently, the July 23 date was vacated over Saunders' objection and the court conferred with the parties to find an agreeable date. Numerous dates were eliminated due to scheduling conflicts of the parties and the court, and the trial was ultimately set for September 5, 2018. On August 2, Saunders filed a four-page motion to dismiss for speedy trial, and the State filed its response August 10. The parties stipulated the matter could be decided on the briefing, and the District Court denied the motion on August 30, 2018.

¶7     The trial took place on September 5-6, 2018, with the jury acquitting Saunders of on Theft (Count II), but convicting him of Burglary (Count I) and the three remaining Theft charges (Counts III-V). The District Court imposed concurrent sentences resulting in a commitment to the Department of Corrections for 20 years, with 15 years suspended, and restitution in the amount of $114,710.08, and fees and surcharges of $180. Saunders was credited with 494 days of time served. Saunders appeals, challenging the denial of his speedy trial motion.

4

¶8 A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article II, Section 24 of the Montana Constitution. A speedy trial claim implicates constitutional concerns subject to de novo review. *State v. Steigelman*, 2013 MT 153, ¶ 10, 370 Mont. 352, 302 P.3d 396 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). A district court's factual findings are reviewed for clear error. *Steigelman*, ¶ 10 (citing *Ariegwe*, ¶ 119). Whether factual circumstances establish a speedy trial violation presents a question of law. *Steigelman*, ¶ 10 (citing *Ariegwe*, ¶ 119).

¶9 A delay of 200 days or more, regardless of fault or reason for delay, triggers a speedy trial analysis. *Ariegwe*, ¶ 62. The analysis consists of balancing four factors to determine whether a defendant was deprived of the right to a speedy trial: (1) the length of delay; (2) the reason for delay; (3) the defendant's response to the delay; and (4) prejudice to the defendant caused by the delay. *Ariegwe*, ¶¶ 107-112. No factor is alone dispositive, though their respective significance may vary from case to case, and each must be considered together along with all other relevant facts and circumstances. *Ariegwe*, ¶¶ 105, 112.

*Length of the Delay*.

¶10 A delay exceeding 200 days creates a presumption of prejudice, and the State's burden to justify the delay grows congruently as the delay increases. *Ariegwe*, ¶ 62. The delay here greatly exceeded the 200-day threshold, and the State concedes that this factor

5

weighs in Saunders' favor, requiring it to make a persuasive showing that Saunders was not prejudiced by the delay.[1]

*Reasons for the Delay.*

¶11    Under this factor, the periods of delay are attributed to either the defendant or the State, according to the nature and culpability of the delay. *Steigelman*, ¶ 15 (citing *Ariegwe*, ¶ 67). While intentional delay or delay caused by bad faith weigh heavily against the State, *Ariegwe*, ¶ 67, institutional delays—those inherent in the nature of the criminal justice system—are, while still attributable to the State, weighed less heavily. *Steigelman*, ¶ 15. Delays caused by the State's negligence or inadequate diligence occupy a middle ground between intentional and institutional delays. *Ariegwe*, ¶ 69.

¶12    The District Court divided the delay into four periods. Regarding the 80-day period from July 9, 2017 to September 27, 2017, the District Court attributed the delay to the State but afforded little weight because it found the delay to result from scheduling errors and transfer of the case from justice court, and therefore was institutional. The District Court attributed the 126-day period from September 27, 2017 to January 31, 2018, to Saunders, reasoning his counsel's substitutions and requests for continuances had left the court unable to set a trial date. The District Court attributed the time between the trial being set and the original trial date, 124 days from January 31 to June 4, 2018, as institutional, explaining

---

[1] The District Court and the parties operated on the assumption that 421 days had elapsed between July 9, 2017 and September 5, 2018. As noted in the appellate briefing, the correct count is 423 days.

that the court's "criminal trial months are March, June, September and December" and, given the "normal delay caused by overloaded court dockets[,]" the initial trial setting was "not surprising[.]"

¶13 Saunders argues collectively that the entire 330-day period from July 9, 2017 to June 4, 2018 should be classified as institutional delay, and weighed against the State, because he was forced to go along with the continuances requested by his attorneys to ensure adequate assistance of counsel and, therefore, he was forced to choose between two constitutional rights. He notes that he raised the issue of "lack of counsel" to the District Court. However, appointed or assigned public counsel, just as privately retained counsel, serve the interests of the defendants they represent, and their actions are attributable to their clients. *Vermont v. Brillon*, 556 U.S. 81, 85, 129 S. Ct. 1283, 1287 (2009). While the "general rule attributing defendant delay caused by assigned counsel is not absolute[,]" and the State may bear responsibility for delay caused by occurrences such as a "systemic breakdown in the public defender system," the record here of busy counsel apparently covering defense responsibilities, if not preferable, does not reflect a breakdown of that magnitude. *See Brillon*, 556 U.S. at 94, 129 S. Ct. at 1292 (internal quotation omitted). Counsel's representation of Saunders is not otherwise challenged on appeal.

¶14 Finally, the District Court determined that the "majority" of the final 93-day period from June 4 to September 5, 2018 was "either institutional in nature or delay attributable to [Saunders]." The court noted that the trial was moved to July 23 on its own motion, but that, although earlier trial dates were available, Saunders rejected them, while the State was

lukewarm to earlier proposed dates but not categorically opposed. The court reasoned that there was no "proof of a bad-faith delay, such as a deliberate attempt to avoid bringing [Saunders] to trial[,]" nor was there any evidence of "lack of due diligence on the part of the State," citing *Ariegwe*, ¶ 108. Given that the June 4 trial was cancelled by the District Court and Saunders lacked flexibility for earlier dates, we conclude the court did not err by concluding this period of delay weighed slightly in favor of the State.

*Saunders' Response to the Delay.*

¶15 The third factor assesses to what extent the defendant acquiesced or objected to delay to ascertain "whether the accused actually wanted a speedy trial." *Ariegwe*, ¶ 79; *Steigelman*, ¶ 18. This requires consideration of circumstances such as the "timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence [to prosecutorial delay], whether the accused was represented by counsel, [and] the accused's pretrial conduct[,]" though we are mindful that the timing and numerosity of objections to pretrial delay is "not talismanic." *Ariegwe*, ¶ 80 (citation omitted).

¶16 Saunders points to his complaints about counsel in his August 14, 2017 letter to the court and his February 2, 2018 bail reduction hearing. However, while this underscores his prior point about dissatisfaction with his counsel, without more these did not state a desire for a speedy trial. The only speedy trial concern raised by Saunders was the brief motion filed on August 2, 2018, months after the April 11 hearing at which the September 5 trial date was set. The District Court found no assertion of speedy trial, adding "the late-filing of the instant motion reflects an insincerity in [Saunder's] alleged desire for a

8

speedy trial," because Saunders "could have filed the instant motion shortly after the April 11, 2018 Status Hearing when [the District Court] continued the trial to September 5, 2018." We conclude the District Court did not err by determining the third factor weighs in favor of the State.

*Prejudice.*

¶17 The final factor requires determining the existence and extent of prejudice suffered by Saunders because of the delay. The prejudice factor is analyzed through three sub-factors: "(1) oppressive pretrial incarceration; (2) undue prolonged disruption of the accused's life and aggravated anxiety or concern; and (3) whether the delay has impaired the accused's ability to present an effective defense." *Steigelman*, ¶ 21 (citing *Ariegwe*, ¶ 88). Of these subfactors, the impairment of the defendant's ability to present an effective defense "constitutes the most important factor." *Steigelman*, ¶ 29.

¶18 The District Court noted the brevity of Saunders' speedy trial challenge, stating the motion "failed to discuss all elements of the fourth factor[.]" Saunders relies on the proportional decrease in the requisite proof of prejudice as the length of delay increases, *Ariegwe*, ¶ 105, but this does not eliminate the necessity of prejudice altogether, and the District Court concluded Saunders had not established any prejudice.

¶19 Whether pretrial incarceration is oppressive considers the duration of incarceration, the complexity of the charges, any action by the defendant directly related to pretrial incarceration, and the conditions of confinement. *Ariegwe*, ¶¶ 90-93. The District Court noted the case was complex, involving five felonies, a significant number of witnesses, and

a substantial amount of discovery, and that Saunders had "a significant criminal history" involving prior felonies and probation violations. The court reasoned that it nonetheless provided an opportunity for release upon submission of employment and housing information, but that Saunders never provided it. The court reasoned that the charges and Saunders' criminal history warranted incarceration, and that it was not oppressive. We have affirmed delays of similar length when the State bore its burden, *Ariegwe*, ¶ 122 (affirming 408-day delay), and we conclude the District Court did not err.

¶20 Regarding the second factor, some mental anguish is expected and there must be a showing that the struggles exceed the "anxiety and concern that are inherent in being accused of a crime." *Ariegwe*, ¶ 111. The District Court found that Saunders failed to "present any evidence that he has suffered above-normal anxiety and concern for a defendant charged with a crime[,]" and we find no error.

¶21 The impairment of defense factor also favors a finding of no prejudice. Saunders offers no specific argument, relying only upon his assertion that he was forced to choose between two constitutional rights—effective assistance of counsel and a speedy trial— which all but concedes that the delay did not serve to impair his defense, but rather functioned to improve his defense by allowing counsel to prepare more adequately. The District Court dismissed Saunders' claims that witness memories had faded and that he was less likely to track down witnesses as unsupported, and the argument has not been renewed on appeal. We conclude the District Court did not err in this determination.

*Balancing*.

¶22 Balancing the four factors, we conclude the District Court did not err by determining Saunders' right to a speedy trial was not violated. Under the facts, the lack of intentional delay on the part of the State and lack of prejudice from the delay outweigh the length of the delay.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

11